NO. 15-2440

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

LIGHTSPEED MEDIA CORPORATION,
*Plaintiff*,

v.

ANTHONY SMITH, et al.,
*Defendants-Appellees*,

Appeal of:
JOHN STEELE, & PAUL HANSMEIER,
*Appellants*.

---

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:12-cv-00889-DWH-SCW

---

**Opening Brief & Required Short Appendix of
Appellants John Steele & Paul Hansmeier**

---

Paul Hansmeier
100 5th St. S. Suite 1900
Minneapolis, MN 55402
(612) 234-5744

John Steele
500 Michigan Ave., Suite 600
Chicago, IL 60611
(312) 396-4154

## CIRCUIT RULE 26.1  DISCLOSURE STATEMENT

Appellate Court No: 15-2440

Short Caption: Lightspeed Media Corp. v. Smith, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **[  ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Paul Hansmeier, in propria persona.

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

N/A

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

      N/A

   ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

      N/A

Attorney's Signature:  s/ Paul Hansmeier                    Date:  10/29/15

Attorney's Printed Name:  Paul Hansmeier

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes _____  No ✕

Address:  100 South Fifth Street, Suite 1900

           Minneapolis, MN 55402

Phone Number: 612-234-5744            Fax Number:  N/A

E Mail Address:  mail@classjustice.org

rev. 01/08 AK

# CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: 13-3801

Short Caption: LIGHT SPEED MEDIA CORP V. SMITH, ET AL

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

JOHN STEELE, IN PROPRIA PERSONA

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

N/A

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

---

Attorney's Signature: s/ _John Steele_     Date: 1/20/14

Attorney's Printed Name: John Steele

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ◯   No ⊗

Address: 1111 Lincoln Rd 400

MIAMI BEACH FL 33139

Phone Number: 786-571-8131     Fax Number: N/A

E-Mail Address: JOHNLSTEELE @ GMAIL.COM

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES .......................................................................iii

Jurisdictional Statement .............................................................................1

    A.    The District Court's Jurisdiction ......................................... 1

    B.    Appellate Jurisdiction ........................................................... 2

    C.    The District Court's November 27, 2013 Sanctions Order Is Final And Immediately Appealable........................................................................ 3

Statement of the Issues Presented ............................................................. 4

Statement of the Case .................................................................................. 5

    A.    The $65,263 Contempt Fine ................................................. 5

    B.    The $94,343.51 Discovery Sanction .................................... 7

Summary of the Argument........................................................................... 8

ARGUMENT .................................................................................................. 11

I.    The $65,263 Contempt Fine Entered Against Hansmeier Must Be Vacated ................................................................................................. 11

    A.    The District Court Abused Its Discretion By Considering The Evidence Smith Relied On In His Motion For Reconsideration Against Hansmeier.......................................................... 11

    B.    The District Court Erred In Its Interpretation Of The Documents Attached To Smith's Motion For Reconsideration Against Hansmeier........................................................................ 16

    C.    Contempt Was Not An Available Remedy With Respect To Hansmeier's Statements To The District Court.......................... 20

II.    The $65,263 Contempt Fine Entered Against Steele Must Be Vacated......... 25

III.    The District Court Erred By Imposing A $94,343.51 Discovery Sanction On Steele ................................................................................. 27

    A.    The District Court Should Not Have Relied On The Documents Smith Submitted In Connection With His Motion For Reconsideration Against Steele ................................ 28

    B.    Steele Did Not Engage In Discovery Misconduct...................... 28

    C.    The District Court's Award Of $94,343.51 In Discovery Sanctions Was Grossly Excessive .............................................. 31

CONCLUSION................................................................................................ 33

Certificate of Compliance ............................................................................. 34

Statutory Addendum ................................................................................. 35

REQUIRED SHORT APPENDIX ............................................................. 36

# TABLE OF AUTHORITIES

## Cases

*Autotech Techs. LP v. Integral Research & Dev. Corp.*,
    499 F.3d 737 (7th Cir. 2007) ..................................................................... 4

*Caisse Nationale de Credit Agricole v. CBI Indus.*,
    90 F.3d 1264 (7th Cir. 1996) ................................................... 10, 12, 15

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ................................................................................... 3

*Ex parte Hudgings*,
    249 U.S. 378 (1919) ................................................................................. 24

*FTC v. Trudeau*,
    579 F.3d 754, 769 (2009) ................................................................. 21, 22

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
    512 U.S. 821 (1994) ......................................................................... 21, 23

*Jones v. Lincoln Elec. Co.*,
    188 F.3d 709 (7th Cir. 1999) ................................................................. 24

*Magnus Electronics, Inc. v. Masco Corp. of Indiana*,
    871 F.2d 626 (7th Cir. 1989) ................................................................. 12

*Maynard v. Nygren*,
    332 F.3d 462 (7th Cir. 2003) ................................................................... 4

*Musch v. Domtar Industries, Inc.*,
    587 F.3d 857 (7th Cir 2009) ................................................................. 12

*Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*,
    924 F.2d 633 (7th Cir. 1991) ................................................................... 5

*Nye v. United States*,
    313 U.S. 33 (1941) ................................................................................... 21

*Powell v. AT&T Comm., Inc.*,
    938 F.2d 823 (7th Cir. 1991) ........................................................... 4, 11

*Shakman v. City of Chicago*,
  426, F.3d 925 (7th Cir. 2005) ................................................................ 5

*Sigworth v. City of Aurora*,
  487 F.3d 506 (7th Cir. 2011) ................................................................ 12

*Solis v. Current Dev. Corp.*,
  557 F.3d 772 (7th Cir. 2009) ................................................................ 10

*United States v. Craft*,
  535 U.S. 274 (2002) ................................................................ 27

*Walker v. Soo Line R.R. Co.*,
  208 F.3d 581 (7th Cir. 2000) ................................................................ 4, 11

**Statutes**

18 U.S.C. § 1030 ................................................................ 1

28 U.S.C. § 1291 ................................................................ 2

28 U.S.C. § 1927 ................................................................ 31

**Rules**

Fed. R. Civ. P. 41(a)(1) ................................................................ 3

Fed. R. Civ. P. 37 ................................................................ 31

# Jurisdictional Statement

Appellants Paul Hansmeier and John Steele appeal from an order of the district court holding them in contempt and, with respect to John Steele, imposing a discovery sanction.

## A. The District Court's Jurisdiction

The U.S. District Court for the Southern District of Illinois (the "district court") had federal question and diversity jurisdiction over the subject matter of this action pursuant to a Notice of Removal filed by Defendant SBC Internet Services, Inc. d/b/a AT&T Internet Services ("AT&T") on August 9, 2012, which cited 28 U.S.C. §§ 1331, 1332, 1441, and 1446. Dkt. 02.[1] Federal question jurisdiction was based upon Plaintiff's assertion of claims under the Computer Fraud & Abuse Act ("CFAA"), 18 U.S.C. § 1030, and supplemental jurisdiction over Plaintiff's state law claims was based upon the relation of the state law claims to the CFAA claims such that they formed part of the same case or controversy. *Id.* at 3. Diversity jurisdiction was based upon Plaintiff's allegations of having been damaged in the amount of $774,850 and upon Plaintiff's request for actual damages in an amount exceeding $200,000. *Id.* at 5. Plaintiff is an Arizona corporation with its principal place of business in Arizona; Defendant AT&T is a California corporation with its principal place of business in Texas; and

---

[1] "Dkt." refers to the docket number in the district court record. "SA" refers to the short appendix attached to this brief. "AA" refers to the separately-bound appendix submitted with this brief.

Defendant Comcast Cable Communications, LLC ("Comcast") is a limited liability company organized under Delaware law, whose sole member is Comcast Holdings Corp., a Pennsylvania corporation with its principal place of business in Pennsylvania. *Id.* at 4. No other parties were joined and served at the time of removal, including Defendant Smith, a citizen of the state of Illinois. *Id.* at 4–5.

## B. Appellate Jurisdiction

The United States Court of Appeals for the Seventh Circuit has jurisdiction to hear the appeal from a final order imposing sanctions under the district court's contempt authority. The district court's final order imposing sanctions against attorney Hansmeier was entered on June 5, 2015. SA-1. No motion for new trial, for alteration of a judgment, or any motion otherwise claimed to toll the time within which to appeal was filed. Paul Hansmeier filed a timely notice of appeal on July 6, 2015. AA-1. The district court's final order imposing sanctions against attorney John Steele was entered on July 23, 2015. SA-1, SA-18. No motion for new trial, for alteration of judgment, or any motion otherwise claimed to toll the time within which to appeal was filed. John Steele filed a timely notice of appeal on August 6, 2015. AA-2. This case is not a direct appeal from the decision of a magistrate judge.

### C. The District Court's November 27, 2013 Sanctions Order Is Final And Immediately Appealable.

All claims in the underlying action were voluntarily dismissed without prejudice by Plaintiff Lightspeed Media Corp. ("Lightspeed"), pursuant to Fed. R. Civ. P. 41(a)(1), on March 21, 2013. AA-3. The district court set the amount of the fee award to Smith against Hansmeier in a final order entered on June 5, 2015. SA-1. The district court set the amount of the fee award to Smith against Steele in a final order entered on July 23, 2015. SA-1, SA-18.

An order entering sanctions against attorneys after voluntary dismissal of the action under Rule 41(a)(1) is a final appealable order. *See generally Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) (reviewing Rule 11 sanction entered after voluntary dismissal under Rule 41(a)(1)). While sanctions orders entered during pending litigation are interlocutory and are not immediately appealable as collateral orders, the underlying litigation here was voluntarily dismissed on March 21, 2013, rendering the sanctions order final and immediately appealable.

## Statement of the Issues Presented

1. Whether the district court erred by considering the documents attached to Smith's motion for reconsideration.

**Standard of review:** This Court reviews *de novo* whether a district court applied the appropriate legal standard in determining the admissibility of evidence. *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 590 (7th Cir. 2000). While a district court's ultimate determination on admissibility is reviewed for abuse of discretion, a failure to consider an essential factor is an abuse of discretion. *Powell v. AT&T Comm., Inc.*, 938 F.2d 823, 825 (7th Cir. 1991).

2. Whether the district court erred by making factual findings, and imposing sanctions, unsupported by the record.

**Standard of review:** Factual findings are generally reviewed for clear error, but findings tainted by application of an incorrect legal standard are subject to fuller review. *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003).

3. Whether the district court exceeded its authority by imposing a contempt sanction for purported false statements to the Court without providing the due process protections associated with criminal contempt proceedings.

**Standard of review:** Although this Court reviews contempt findings for abuse of discretion, *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 751 (7th Cir. 2007), it is axiomatic that a district court

abuses its discretion when it commits an error of law. *See, e.g., Shakman v. City of Chicago*, 426, F.3d 925, 932 (7th Cir. 2005).

4. Whether the district court erred in its determination of the fees reasonably recovered by Smith in connection with Steele's purported discovery violation.

**Standard of review:** A district court's determination of a fee petition is reviewed for an abuse of discretion. *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 642 (7th Cir. 1991).

## Statement of the Case

This case is an appeal from a final order imposing a contempt fine of $65,263 jointly and severally against Appellants John Steele ("Steele") and Paul Hansmeier ("Hansmeier") and $94,343.51 in discovery sanctions, apportioned equally between Steele and Paul Duffy ("Duffy").[2] This case has a lengthy history and the relevant history is presented below.

## A. The $65,263 Contempt Fine

On November 27, 2013, the district court imposed sanctions under 28 U.S.C. § 1927 in the amount of $261,025.11 against Duffy, Steele and Hansmeier. AA-6. After the district court imposed the sanctions Duffy, Steele and Hansmeier presented documents prepared by a certified public account to establish an "inability to pay" defense with respect to the sanction award. AA-19. While these documents were under consideration by

---

[2] Paul Duffy recently passed away.

the district court, on March 20, 2013, Appellee Anthony Smith (but not his co-defendants) filed an *ex parte* motion with the district court seeking several forms of relief, all of which were apparently focused on examining the personal finances of the sanctioned attorneys. AA-20. The ostensible purpose of this motion was to gather information to undermine the sanctioned attorneys' inability to pay defense.

On March 24, 2013, the district court entered an order holding that the sanctioned attorneys had not met their burden of proof with respect to proving inability to pay. AA-21. In its order, the district court imposed a contempt sanction of $26,102.58 to compensate Anthony Smith and his co-defendants for the harm caused by the attorneys' failure to timely pay the original $261,025.11 sanction. *Id.* In its order the district court also took the unusual step of recharacterizing Smith's *ex parte* motion as a motion for renewed contempt arising from the sanctioned attorneys' false statements to the district court. *Id.*

After nearly a year of extensive discovery, on November 12, 2014, the district court held an evidentiary hearing at the U.S. Courthouse in the Southern District of Illinois. AA-34. Both sides had an opportunity to present evidence and argument. *Id.* After taking the matter under advisement, the district court denied Smith's recharacterized motion for contempt, holding that Smith did not satisfy his burden of proof. AA-35. Soon afterwards, Smith began filing a series of motions for reconsideration and

motions to supplement his motions for reconsideration. Dkts. 189, 190, 190-1, 190-2, 190-3, 190-4, 194, 195, 197, 197-1, 197-2, 197-3, 197-4. Attached to these filings were documents Smith had obtained prior to the November 12, 2014 hearing and documents Smith obtained after the hearing. *Id.* Appellants opposed Smith's motions for reconsideration, but the district court granted the motions on June 5, 2015. SA-1. In its order the district court held that Steele and Hansmeier made false statements to the Court and imposed a $65,263 fine jointly and severally on Steele and Hansmeier. *Id.*

## B. The $94,343.51 Discovery Sanction

On April 18, 2014, Smith filed a motion charging Steele and Duffy with obstructing discovery. Dkts. 153, 153-1. In his motion, Smith sought payment of $4,908, which he claimed was an amount sufficient to compensate him for the harm he suffered due to the alleged obstruction. *Id.* After reviewing Smith's motion papers and holding an evidentiary hearing, the district court denied Smith's motion in its entirety. AA-35. Soon afterwards, Smith began filing motions for reconsideration and motions to supplement those motions for reconsideration. Dkts. 189, 190, 190-1, 190-2, 190-3, 190-4, 194, 195, 197, 197-1, 197-2, 197-3, 197-4. Steele objected to Smith's motions, but the district court granted the motions on June 5, 2015. SA-1. The district court invited Smith to submit a petition for fees attributable to Steele and Duffy's purported discovery obstruction. *Id.*

Smith submitted a fee petition seeking $94,343.51. AA-45. Steele objected to Smith's fee petition, noting, among other points, that Smith was seeking fees for work that predated the alleged discovery obstruction and that Smith was seeking fees for work performed with respect to discovery that was never alleged to have been obstructed. Dkt. 208.

In a minute entry dated July 21, 2015, the district court ordered that Smith be awarded the entire amount of his requested fees, citing Steele's discovery obstruction. SA-18. On August 10, 2015, three days after Steele filed his notice of appeal, and the day that the fees awarded were due, the district court entered a Notice of Errors and/or Deficiencies. In the Notice, the district court claimed that it inadvertently failed to attach its order to the July 21, 2015 minute entry. Dkt. 213. However, this Court may take judicial notice that the order described in the Notice was digitally signed by the district court on August 10, 2015. *Id.* Thus, the August 10, 2015 order was entered in the absence of jurisdiction and is outside the record on this appeal.

## Summary of the Argument

The district court held Hansmeier and Steele in contempt for making false statements to the court and fined them $65,263 on a joint and several basis. Neither Hansmeier nor Steele made a false statement to the district court. The statements identified in the district court's order were ar-

guments presented in memoranda of law. The district court was entitled to rule against these arguments, but that is all the district court was entitled to do. The district court had no power to fine Hansmeier and Steele $65,263 simply because it disagreed with their arguments. It certainly had no power to impose a $65,263 contempt fine without providing mandatory due process protections, none of which were provided below. Further, the district court's analysis with respect to both Hansmeier and Steele was premised on manifest errors of law and fact. With respect to Hansmeier, for example, the district court confused the concept of a "manager" of limited liability company with the concept of a "member." For Steele, the district court failed to recognize and apply Florida law with respect to tenants by the entirety.

The district court held that Steele engaged in willful discovery obstruction and sanctioned him an equal share of $94,343.51. Steele did not engage in discovery obstruction. The two statements identified in the district court's order were, as a matter of public record, true statements made to third parties. Neither of these statements interfered with discovery, as the third parties in question voluntarily provided the information sought in Smith's subpoenas, notwithstanding Steele's purported obstruction. The district court's imposition of a $94,343.51 fine was grossly out of proportion to any harm that Steele's purported obstruction could have conceivably caused. Smith's original request for fees arising from the purported

discovery obstruction was $4,908. The district court's fee award included fees that were incurred prior to Steele's purported obstruction and costs and fees associated with obtaining discovery from completely unrelated third parties.

A further problem infecting both the contempt fine and the discovery sanction is that they were both imposed in connection with motions for reconsideration. Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. *Caisse Nationale de Credit Agricole v. CBI Indus.,* 90 F.3d 1264, 1270 (7th Cir. 1996). Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion. *Id.* A court should not allow a motion for reconsideration to address arguments that party should have previously raised. *Solis v. Current Dev. Corp.,* 557 F.3d 772, 780 (7th Cir. 2009). The district court erred by failing to properly apply the legal standard applicable to motions for reconsideration. This allowed Smith to use his motion for reconsideration as a vehicle for rehashing arguments the district court previously rejected and to present evidence that was (or could have been) in his possession at the time of the November 12, 2014 hearing.

# ARGUMENT

## I.    The $65,263 Contempt Fine Entered Against Hansmeier Must Be Vacated

The $65,263 contempt fine the district court entered against Hansmeier must be vacated. The district court abused its discretion by considering the evidence Smith relied on in his motion for reconsideration against Hansmeier. Further, the district court manifestly erred in its interpretation of Smith's evidence. Finally, a contempt fine was unavailable as a matter of law.

### A. The District Court Abused Its Discretion By Considering The Evidence Smith Relied On In His Motion For Reconsideration Against Hansmeier

The district court abused its discretion by considering the documents Smith relied on in his motion for reconsideration against Hansmeier. These documents did not meet the standard for new evidence on reconsideration, *i.e.* that evidence be newly discovered and could not have been discovered with reasonable diligence prior to the November 12, 2014 hearing on Smith's second motion for contempt. Although Hansmeier raised this issue to the district court, the district court's sanctions order did not contain any findings regarding how the documents attached to Smith's motion for reconsideration met this standard. A failure to properly apply the law or make necessary findings is an abuse of discretion. *See Walker*, 208 F.3d at 590; *Powell*, 938 F.2d at 825.

The governing legal framework is quite straightforward: "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit*, 90 F.3d at 1269 (7th Cir. 1996). "Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of [a motion under reconsideration]." *Id.*; *Musch v. Domtar Industries, Inc.*, 587 F.3d 857, 861 (7th Cir 2009); *Sigworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2011). "To support a motion for reconsideration, the moving party must show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence during the pendency of the motion." *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270–71. Indeed, "[a] motion to reconsider is frivolous if it contains no new evidence or arguments of law that explain why the [court] should change an original order that was proper when made." *Magnus Electronics, Inc. v. Masco Corp. of Indiana*, 871 F.2d 626, 630 (7th Cir. 1989).

Smith used his motion for reconsideration against Hansmeier to introduce new evidence that was or could have been adduced during the pendency of his second motion for contempt. The new evidence that Smith attached to his motion for reconsideration against Hansmeier consisted of: (a) wire transfer slips Smith obtained from Scottrade, Inc.; (b) account ap-

plication forms Smith obtained from Scottrade, Inc. and TCF National Bank; and (c) testimony from a June 30, 2014 proceeding. AA-89. According to time sheets Smith submitted to the district court, Smith obtained these documents in subpoenas issued on dates ranging from March 19, 2014 to February 25, 2015, AA-45; the testimony, of course, existed as of June 30, 2014. The existence of the Monyet LLC entity, *i.e.* the entire basis of Smith's motion for reconsideration, was a matter of public record since late 2010. Thus, many of these documents were or should have been in Smith's possession prior to the November 12, 2014 evidentiary hearing.

To the extent that some of these documents were not in Smith's possession prior to the November 12, 2014 hearing, Smith provided no explanation for why these documents could not have discovered with reasonable diligence prior to the hearing. The documents relied on by Smith consisted of account application forms dating as far back as 2010, money transfer forms ranging in dates from May 2013 to May 2014, and testimony given on June 30, 2014. Thus, the documents Smith relied on in his motion for reconsideration came into existence months, if not years, prior to the November 12, 2014 hearing. The legal standard applicable to motions for reconsideration requires more than a showing that documents are newly discovered; it also requires a showing that the documents could not have been discovered with reasonable diligence. Neither Smith nor the district

court alluded to anything suggesting that the "reasonable diligence" requirement was satisfied.[3]

By all indications, then, Smith took all of the discovery he reasonably believed was necessary to be taken prior to the November 12, 2014 hearing. Smith's counsel made a strategic decision not to present the documents relied on in Smith's motion for reconsideration at the November 12, 2014 hearing—either because Smith's counsel did not believe that the presentation of documents already in Smith's possession was necessary or because Smith's counsel did not believe the documents were worth discovering prior to the November 12, 2014 hearing. Smith's reliance on improper documents in his motion for reconsideration is strongly suggestive of Smith's attempt to use his motion for reconsideration as a "second bite at the apple", *i.e.* a shift in trial strategy, rather than to correct a manifest error of law or fact.

To reiterate: as the party moving for reconsideration, it was Smith's burden to show that the evidence he attached to his motion for reconsideration against Hansmeier was not in Smith's possession and could not have been discovered by Smith with reasonable diligence. In his submissions below, Smith made no attempt to satisfy this bright-line legal requirement. Hansmeier lodged an objection on this ground, but the district

---

[3] Smith never asked the district court to postpone the November 12, 2014 hearing so that he could complete additional discovery or provided any indication that necessary discovery was left to be completed.

court completely ignored the argument and made no findings as to how the evidence attached to Smith's motion satisfied this threshold requirement.

Thus, instead of using his motion for reconsideration for one of the exceptional purposes identified under this Court's precedent, Smith used his motion for reconsideration against Hansmeier, "as a vehicle to introduce new evidence that could have been adduced during his [renewed motion for contempt]." *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269. There is no reason Smith should have been afforded the opportunity for "two bites at the apple."

Allowing parties to experiment with different trial strategies through the vehicle of multiple motions for reconsideration, as Smith did below, is not only wasteful of judicial resources and burdensome on the responding parties, but also creates fertile grounds for judicial error. Had Smith presented these documents at the November 12, 2014 hearing, then Smith would have been required to put on witnesses to introduce these documents. These witnesses would have been subject to cross-examination. The district court would have had an opportunity to examine the witnesses to clarify for itself what the documents meant.

Instead, the district court was presented with a pile of documents without the benefit of hearing and, as set forth in the next section, it erred in its interpretation of those documents.

## B. The District Court Erred In Its Interpretation Of The Documents Attached To Smith's Motion For Reconsideration Against Hansmeier

The district court's analysis of the documents attached to Smith's motion for reconsideration as to Hansmeier was erroneous. The district court's analysis was erroneous for three critical reasons. First, the district court erroneously concluded that Hansmeier was Monyet LLC's sole member. Second, the district court's analysis is inconsistent with basic arithmetic. Third, the district court failed to identify a single false statement Hansmeier made.

### 1. Hansmeier Was Not A Member Of Monyet LLC

The district court found that Hansmeier was Monyet LLC's sole member and manager. While the district court was correct in finding that Hansmeier was Monyet LLC's sole manager, there is nothing in the record identifying Hansmeier as a member of Monyet LLC. Every financial account application, every transfer form, and every other document attached to Smith's various filings lists Hansmeier as a *manager* of Monyet LLC, but not a *member*. AA-89. Critically, Monyet LLC's Operating Agreement identifies Paul Hansmeier as Monyet LLC's manager, but the Mill Trust as Monyet LLC's sole member. AA-99.

This distinction is critical. As a matter of basic corporate law a member of a limited liability company is an owner. The manager of a limited liability company is an operator. The district court's statement that Hansmeier "had access to the Monyet funds both before and after he pled insolvency to the court" is rendered an absurdity if Hansmeier was not Monyet LLC's sole owner, *i.e.* its sole member. After all, if Hansmeier was not a member/owner of Monyet, then the district would, in effect, be fining Hansmeier for not usurping the money of a company he managed. Clearly, this is not what the district court intended and the absurd result is a product of the district court's misinterpretation of the documents presented to it.

### 2.  The District Court Failed To Perform Basic Arithmetic

A second error in the district court's analysis is that it lacked a foundation in basic arithmetic. The district court noted that in the years leading up to the judgment against him, Hansmeier transferred nearly half a million dollars to a company called Monyet. It then referenced a series of transfers out of Monyet throughout the 2013 year and up to May 2014. The district court failed to apply basic arithmetic to test whether the assets remaining in Monyet after those transfers were anywhere near sufficient to satisfy the $261,025.11 sanction obligation. If it had applied basic arithmetic, the district court would have found that the assets remaining in Monyet at the time Hansmeier "pled insolvency" totaled less than

$49,000. AA-89, Exhibit I. Thus, even if Hansmeier could have transferred money out of Monyet without the authorization of a third party, the amount remaining to be transferred was grossly inadequate to satisfy the fee order.

### 3. The District Court Failed To Identify A Single False Statement Hansmeier Made

A third problem with the district court's analysis is that it fails to identify a single false statement Hansmeier made. The district court's order identified two specific statements. First, the order referenced a January 29, 2014 memorandum of law in which Hansmeier stated that the $261,025.11 sanction would impose a "crippling financial liability" on him. SA-1. Second, the order referenced Hansmeier's request "for leave to show inability to pay." *Id.* The district court does not expressly show or find that either of these statements was false.

First, Hansmeier's statement in the January 29, 2014 memorandum that the sanction would impose a "crippling financial liability on him" was made in the context of a request for leave to seek a stay of the sanctions order pending appeal. AA-146. The second element of the legal standard requires a movant to argue the balance of interests, *i.e.* to weigh the benefits to the appellant from a stay of the appeal versus the hardships imposed on the appellee. In this vein, Hansmeier expressed his opinion that payment of $261,025.11 would "impose a crippling financial liability on

him", *i.e.* a significant financial hardship, particularly in relation to the financial resources of appellees AT&T and Comcast, who are among the largest companies in the world. *Id.* In short, Hansmeier was making the non-controversial poitn that $261,025.11 was a lot more money to him than it was for AT&T or Comcast. *Id.* The district court did not find that this was a false statement.

Nor did (or could) the district court find more generally that paying $261,025.11 did not impose a "crippling financial hardship" on Hansmeier. All the district court found was that "Hansmeier had access to the Monyet funds before and after he pled insolvency to the court." SA-1. But Hansmeier never pled insolvency to the Court. He stated that paying $261,025.11 would impose a "crippling financial liability" on him. $261,025.11 is obviously a lot of money to all but the wealthiest members of our society.

A final point regarding Hansmeier's first statement bears mentioning. Hansmeier's "crippling financial hardship" statement was a general statement of opinion. A general statement of opinion, by its very nature, cannot be untruthful. In contrast, Hansmeier provided a very specific, fact based and CPA-prepared, statement of financial position to the district court. The district court did not cite a single inaccuracy in the statement of financial position. Instead, the district court resorted to challenging a very generic, very broad and inherently opinion-based statement.

As for Hansmeier's second statement, *i.e.* Hansmeier's request for leave to show inability to pay, it is highly unusual that the district court is impliedly claiming that Hansmeier's request for leave to file a document was, in and of itself, a statement deserving of a $65,263 contempt fine. Obviously an application to the district court for leave to file a document is not a statement that, in and of itself, is even capable of being false. There is no question that Hansmeier presented the request, and the district court's options were to grant it or deny it. The district court did not have authority to impose a $65,263 contempt fine based on this request.

## C.  Contempt Was Not An Available Remedy With Respect To Hansmeier's Statements To The District Court

Hansmeier, in the strongest possible terms, denies making false statements to the district court. Beyond the factual question of truthfulness, however, is the legal question of whether contempt was an available remedy under the law. It was not. The district court was required to provide mandatory due process protections before imposing the criminal contempt sanction it imposed below. However, even if this Court construes the district court's sanction as a civil contempt sanction, civil contempt was not an available remedy under the law.

### 1.  The District Court Failed To Provide Hansmeier With Mandatory Due Process Protections Prior To Imposing A Contempt Fine

The district court's $65,263 contempt fine was a criminal contempt sanction, rather than a civil contempt sanction; the sanction served to

punish, rather than to coerce or compensate. As a result, the district court was required to provide the mandatory due process protections associated with criminal contempt proceedings. The district court did not provide any of these mandatory due process protections. Therefore, this Court must vacate the $65,263 sanction the district court imposed on Hansmeier.

The district court's contempt sanction was a criminal contempt sanction. "Contempt sanctions come in two forms — criminal and civil." *FTC v. Trudeau*, 579 F.3d 754, 769 (2009). The nature of a sanctions depends on the character of the relief, and not on the subjective intent of the district court. *Id.* (citing *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 828 (1994). In terms of monetary sanctions, a contempt is "civil" if it compensates a complainant for losses suffered or coerces a contemnor's compliance with a court order. *Id.* In contrast, a criminal sanction is a sanction that is intended to punish a wrongdoer, rather than compensate a complainant from losses suffered or coerce compliance with a court order. *Id.* Thus, a "flat, unconditional fine totaling as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Id.* (quoting *Bagwell*). The distinction between a criminal and civil contempt sanction is critical. "If any part of [a sanction] winds up being punitive instead of remedial, then criminal proceedings are required to sustain it." *Id.* At 770 (citing *Nye v. United States*, 313 U.S. 33, 43-44 (1941)).

Applying this legal standard to the facts of this case, the district court's contempt sanction was a criminal contempt sanction because it was neither coercive nor compensatory. The district court's contempt sanction was not coercive because Hansmeier had no opportunity to purge the sanction through compliance with a court order. *Trudeau*, 579 F.3d at 770. The contempt sanction was not compensatory for several reasons.

*First*, the district court's method of calculating the sanction amount resulted in a punitive sanction. The district court stated, "[o]ne might recognize that the amount of the sanction is twenty-five percent of Judge Murphy's original sanction and that the last sanction from the undersigned was ten percent." SA-1. The district court then stated, "[a] pattern is purposefully developing whereby the contemnors could find themselves back to the full sanction Judge Murphy ordered for their original wrongdoing if they continue their misdeeds before the Court." SA-1. Thus, on the face of the district court's order, nothing in the district court's method of calculating the sanction had anything to do with addressing harm Smith suffered. Instead, on the very face of his order, the district court was expressly punishing Hansmeier. To be clear, the district court's sanctions calculation involves an ever-increasing multiplier applied to a prior sanction, irrespective of harm to any aggrieved party. The is the quintessential description of a sanction imposed for the purpose of punishment. After all, a flat

unconditional fine totaling "even as little as $50 announced after a finding of contempt" is a criminal contempt sanction. *Id.* At 769 (quoting *Bagwell*).

*Second*, this was the second sanction the district court imposed against Hansmeier and others relating to the statements Hansmeier and others presented to the district court. The first sanction was imposed on March 24, 2013, in the amount of $26,102.58. AA-21. In the March 24, 2013 order the district court made express findings regarding the compensatory nature of that sanction. Because the first sanction served to compensate Smith for Hansmeier's failed effort to demonstrate an inability to pay, any additional sanction arising from the same essential acts could not possibly serve a compensatory function.to what se

*Third*, the district court's order contained zero findings or statements linking the amount it awarded Smith to any sort of financial harm Smith suffered. Nor is there is there anything in the record that would support such a link.

*Fourth*, there was no harm inflicted on Smith. Hansmeier's statement that the sanction would impose a "crippling financial liability", as well as his request for leave to file documents to demonstrate an inability to pay did not harm Smith. Indeed, the district court did not rely on any statement Hansmeier made regarding his financial position.

The criminal contempt sanctions imposed by the district court must be vacated because "criminal sanctions require certain constitutional safeguards before they are imposed (e.g., right to counsel, notice of charges, double jeopardy, proof beyond a reasonable doubt)." *Trudeau,* 579 F.3d at 769. It is beyond serious question that the proceedings below had "none of the bells and whistles of a criminal trial." *Id.* Because these mandatory safeguards were not provided below, the criminal contempt sanction imposed on Hansmeier must be vacated.

### 2. Civil Contempt Is Not An Available Remedy With Respect To Hansmeier's Statements To The District Court

If this Court characterizes the district court's contempt sanction as a civil contempt sanction, notwithstanding that the sanction can only be described as punitive in nature, the sanction must nevertheless be vacated. Civil contempt was not an available remedy with respect to Hansmeier's statements to the district court. This Court's holding in *Jones v. Lincoln Elec. Co.*, 188 F.3d 709 (7th Cir. 1999), explains why.

In *Jones*, this Court addressed the question of whether a witness who testified falsely at trial could be held in civil contempt. *Id.* at 737. This Court held that civil contempt was an "improper method by which to punish perjurious or false testimony absent some element of obstruction of justice." *Id.* At 738. Referencing *Ex parte Hudgings*, 249 U.S. 378 (1919), this Court noted that allowing courts to hold witnesses in civil contempt

for testimony the district court disagrees with would provide district courts with too much power to dictate the outcome of judicial proceedings. *Id.* At 739. Further, this Court noted that to hold a witness liable for money damages on the sole basis of false testimony would violate the longstanding rule that parties and witnesses are immune from subsequent damages liability for their testimony in judicial proceedings. *Id.* At 740.

Nothing about Hansmeier's statements to the district court obstructed or halted the judicial process. Nothing in the district court's sanctions order suggests that Hansmeier's statements to the district court obstructed or halted the judicial process. Nothing in Smith's filings below suggests that Hansmeier's statements to the district court obstructed or halted the judicial process. The sole charge levied against Hansmeier is that his statements to the district court regarding his financial position were untrue. Civil contempt was not an available remedy with respect to this charge.

## II.    The $65,263 Contempt Fine Entered Against Steele Must Be Vacated

For the very same reasons presented in Sections I.A and I.C, *supra*, the $65,263 contempt Fine entered against Steele must be vacated. In addition, for the reasons set forth below, the documents attached to Smith's motion for reconsideration do not support the district court's conclusion that Steele was untruthful in his statements to the district court.

The district court's contempt order found that Steele falsely claimed insolvency. The threshold problem with this accusation is that Steele never claimed insolvency. What Steele did, in fact, claim was an inability to pay the $261,025.11 sanctions award at the time it issued. The definition of insolvency is when liabilities exceed assets. The concept of inability to pay is different than the condition of insolvency, because there are circumstances where someone's net worth may exceed a sanction amount, but where circumstances nevertheless give rise to an inability to pay.

As the district court's order makes clear, Steele purchased a home in Florida on April 2013. SA-1. The value of the home roughly doubled between April 2013 and October 2014. *Id.* The reason why Steele's home doubled in value over this short period of time is that Steele invested substantial amounts of time and money in gutting and renovating the home during this time. As the district court's order makes clear, the money transfers referenced in the order were made for the purpose of renovating Steele's home. *Id.* Nevertheless, the district court found that Steele had the ability to pay the $261,025.11 sanctions award.

The district court's analysis is associated with a major error: it ignores the ownership of the assets identified in its order. All of the accounts referenced in the order and the house referenced in the order were owned by Steele and his wife as tenants in the entirety. AA-153. Indeed, the account statements referenced in the district court's order expressly read, "tenants

in the entirety." *Id.* The ownership of Steele's home in the form of tenants by the entirety is a matter of public record.

Tenants by the entirety is a concurrent estate in property. *See United States v. Craft*, 535 U.S. 274, 279-82 (2002) (describing tenancy by the entirety). In order for one spouse to modify his or her interest in the property in any way, the consent of both spouses is required. *Id.* Thus, Steele would have required his wife's consent to apply any of the assets identified in the district court's order to the sanctions entered against Steele. Steele's wife was under no obligation to agree to this impairment of her property interests. Not surprisingly, Steele's wife did not, in fact, consent to the impairment of her property interests for the beneficiaries of the sanctions order in this case. Nothing in the record even remotely suggests otherwise.

Steele raised this point to the district court in his briefing below. The district court failed to mention the issue, much less explain why Steele was "able" to apply these assets to the sanctions amount without his wife's consent. The district court's failure to properly apply the law or even, for that matter, consider the law was an abuse of its discretion.

### III. The District Court Erred By Imposing A $94,343.51 Discovery Sanction On Steele

The district court erred by imposing a $94,343.51 discovery sanction on Steele. The district court should not have relied on the documents Smith

submitted in connection with his motion for reconsideration against
Steele. Steele did not engage in discovery misconduct. $94,343.51 was a
grossly excessive award.

## A. The District Court Should Not Have Relied On The Documents Smith Submitted In Connection With His Motion For Reconsideration Against Steele

For the reasons stated in Section I.A, *supra*, the district court erred by
considering the documents Smith submitted in his motion for reconsideration against Steele. The district court's order alludes to two forms of discovery misconduct by Steele. SA-1. First, the order describes communications Steele had with JP Morgan/Chase on January 29, 2014. *Id.* Second,
the order describes communications Steele had with Sabadell United
Bank on April 4, 2014. *Id.* These communications occurred nine and seventh months prior to the November 12, 2014 evidentiary hearing, respectively. In fact, the Sabadell communications were actually presented to
the district court prior to the hearing. AA-158. The district court did not
find that it manifestly erred with respect to its consideration of these documents. SA-1. Reconsideration was therefore inappropriate.

## B. Steele Did Not Engage In Discovery Misconduct

The district court's order alludes to two forms of discovery misconduct
by Steele. First, the order describes communications Steele had with JP
Morgan/Chase on January 29, 2014. Second, the order describes communications Steele had with Sabadell United Bank. These communications

did not constitute discovery misconduct warranting discovery sanctions. The district court abused its discretion by concluding that they did.

### 1. JP Morgan/Chase

The communications between Steele and JP Morgan/Chase were an e-mail dated January 29, 2014 sent by Steele to JP Morgan with a follow-up e-mail dated January 30, 2014, again sent by Steele to JP Morgan. SA-1.

In the January 29, 2014 e-mail, Steele informed JP Morgan that he intended to file a motion to quash with respect to subpoenas issued to JP Morgan by Smith. Steele filed a motion to quash the very next day. On January 30, 2014, Steele sent a copy of the motion to quash to JP Morgan. The district court found that this communication constituted unreasonable, willful obstruction of discovery in bad faith.

There was no basis in fact or law for the district court to impose discovery sanctions on Steele with respect to these communications with JP Morgan.

### 2. Sabadell United Bank

The sole communication referenced by the district court relating to Sabadell United Bank was a communication dated April 16, 2014 sent by Steele to Sabadell. AA-158. In Steele's fax, Steele transmitted a copy of the district court's order entered on April 4, 2014, along with a cover let-

ter. The district court concluded that this communication constituted un-reasonable, willful obstruction of discovery in bad faith.

The district court's conclusion lacks a basis in law or fact. On the face of Steele's cover letter, Steele had a conversation with Sabadell United Bank about a subpoena Smith issued to Sabadell United Bank on March 26, 2014. During that conversation, Steele disclosed the existence of the Court's order dated April 4, 2014. Sabadell United Bank asked for a copy of the order, and Steele provided one. It is not an unreasonable, willful ob-struction of discovery in bad faith to transmit a court order to someone who asks for it.

Particularly objectionable is the district court's rewriting of Steele's cover letter. The district court's order states, "Steele said the *subpoena matter* was stayed on April 4, 2014." This is not true. Steele's cover letter states that the *matter* was stayed on April 4, 2014. AA-158. This Court may take judicial notice that Steele's statement was accurate: the district court's April 4, 2014 stayed the sanctions order pending appeal. Any am-biguity about what "matter" Steele was referring to is conclusively ad-dressed by reference to the order that Steele, in fact, attach to the fax. It was entirely unreasonable for the district court to rewrite Steele's cover letter.

Worth mentioning is that nothing about Steele's communication with Sabadell actually impeded discovery. Smith received the subpoenaed documents from Sabadell without, for example, having to file a motion to compel. The record is full of documents that Smith obtained from Sabadell. *E.g.* AA-153. Thus, not even Sabadell interpreted Steele's communication to reference a stay of any "subpoena matter." The district court abused its discretion by imposing a $94,343.51 sanction in relation to this fax message.

## C. The District Court's Award Of $94,343.51 In Discovery Sanctions Was Grossly Excessive

If the Court concludes that Steele engaged in discovery misconduct, it must still evaluate the reasonableness of the district court's attorneys' fees award. The amount of the fees awarded by the district court, *i.e.* $94,343.51, was grossly excessive and should be reduced by this Court.

The district court justified its award of $94,343.51 under two theories: Federal Rule of Civil Procedure 37 and 28 U.S.C. § 1927. The amount of the award is grossly excessive under either theory—alone, or in combination, as both Rule 37 and 28 U.S.C. § 1927 are fee-shifting provisions.

The only discovery misconduct attributable to Steele that was identified in the district court's June 5, 2015 order granting Smith's motion for reconsideration was Steele's communications with JP Morgan and Sabadell. SA-1. As a matter of basic logic, fees relating to actions that occurred

prior to asserted misconduct are unrecoverable under a fee-shifting provision. Also, fees relating to actions where no obstruction is alleged to have occurred, *i.e.* subpoenas issued to parties other than JP Morgan and Sabadell—are also unrecoverable.

In its late-filed order. the district court attempted to justify Smith's recovery of fees for acts predating Steele's communications with JP Morgan and Sabadell by asserting that those expenses were incurred as a direct result of Steele's: (a) refusal to pay the original sanctions order; (b) purported false assertions of insolvency related thereto. Yet, Steele was already sanctioned $26,102.58 on March 24, 2013 for refusing to pay the original sanctions award. He was sanctioned $65,263 on June 5, 2015 for his purported "false assertions of insolvency." Any additional recovery on Smith's part would simply constitute a punitive sanction, which would require the due process protections that the district court failed to provide. *See* Section I.C, *supra.*

Notably, nothing in the district court's order explains why Smith should be entitled to recover fees associated with issuing discovery to parties other than Sabadell or JP Morgan—*i.e.* discovery where no obstruction is even alleged. Further, nothing in the district court's order addresses the glaring discrepancy between Smith's original estimate of $4,908 and the district court's award of a whopping $94,353.51. Finally, the district court's award of fees for Smith's unsuccessful original motion for dis-

covery sanctions is unreasonable because Smith did not prevail on that motion. The district court's order alludes to a "willful, bad faith representation by plaintiff's counsel," but does not identify who made the representation and what the representation was. The district court's findings are insufficient to allow for meaningful appellate review.

## CONCLUSION

This Court should vacate the $65,263 contempt fine entered against Hansmeier and Steele and the $94,343.51 discovery sanction entered against Steele.


DATED: October 29, 2015

/s/ Paul Hansmeier
Paul Hansmeier
100 5th St. S., Suite 1900
Minneapolis, MN 55402
*In propria persona*

/s/ John Steele        (with consent)
John Steele
500 Michigan Ave., Suite 600
Chicago, IL 60611
(312) 396-4154

## Certificate of Compliance
### With Type-Volume Limitation, Typeface
### Requirements, And Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,382 words, including headings, footnotes, and quotations, and excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Office Word 2016 with 12-point Century Schoolbook font.

DATED: October 29, 2015

/s/ Paul Hansmeier
Paul Hansmeier
100 5th St. S. Suite 1900
Minneapolis, MN 55402
612-234-5644.

# Statutory Addendum

28 U.S.C. § 1927:

Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

# REQUIRED SHORT APPENDIX

# REQUIRED SHORT APPENDIX

## Table of Contents

| Document description | Location in Record | Page No. |
|---|---|---|
| Circuit Rule 30(d) Statement | N/A | ii |
| Memorandum and Order Granting Motion for Reconsideration | Dkt. 199 | SA-1 |
| Text Entry Granting Smith's Fee Request | Dkt. 210 | SA-18 |

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), the undersigned certifies that the material required by Circuit Rule 30(a) is included in the required short appendix. All other material required by Circuit Rule 30(b) is included in the separately-bound appendix.


DATED: October 29, 2015

/s/ Paul Hansmeier
Paul Hansmeier
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
612-234-5744

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LIGHTSPEED MEDIA CORP.,**

     **Plaintiff,**

**v.**                                   **No. 3:12-cv-889-DRH-SCW**

**ANTHONY SMITH, et al.,**

     **Defendants.**

## <u>MEMORANDUM and ORDER</u>

**HERNDON, District Judge:**

## I. INTRODUCTION

This matter is before the Court on defendant Anthony Smith's ("Smith") Motion to Reconsider (Doc. 189) the Court's November 18, 2014 order denying Smith's Motion for Contempt (Doc. 135) and his Motion for Sanctions for Obstructing Discovery (Doc. 153) against Paul Duffy ("Duffy"), John Steele ("Steele"), and Paul Hansmeier ("Hansmeier") (collectively, "Lightspeed's Counsel").

The Court previously found the claims asserted by plaintiff, Lightspeed Media Corporation ("Lightspeed"), were frivolous and baseless. Accordingly, the Court imposed attorney fees and costs on Lightspeed's Counsel totaling $261,052.11 ("Fee Order"). Lightspeed's Counsel did not timely pay the Fee Order and made various representations to the Court regarding an alleged inability to pay. Accordingly, defendants issued third-party subpoenas in an effort to obtain information pertaining to Lightspeed's Counsel's financial status.

Eventually, defendants filed a Motion for Contempt (Doc. 135) and a Motion for Sanctions for Obstructing Discovery (Doc. 153). The motions alleged Lightspeed's Counsel made various misrepresentations regarding their ability to pay the Fee Order and actively sought to obstruct discovery. Although the Fee Order was eventually paid, questions remained regarding (1) the veracity of Lightspeed's Counsel's statements regarding insolvency and (2) Lightspeed's Counsel's alleged obstruction of discovery.

On November 18, 2014, the Court issued an order denying the motions for contempt and sanctions (Doc. 188). The Court found Lightspeed's Counsel's conduct was highly suspicious. However, the Court concluded there was insufficient evidence to support a finding of contempt or to impose sanctions for obstructing discovery (Doc. 188). Thereafter, Smith filed the present motion for reconsideration (Doc. 189). In his motion for reconsideration, Smith argues newly obtained and previously submitted evidence warrant the imposition of sanctions. Accordingly, Smith asks the Court to revisit the issue of sanctions relating to Lightspeed's Counsel's alleged misrepresentations and obstruction of discovery.

The matter has been fully briefed (Response Hansmeier Doc. 191; Response by Steele Doc. 192; Reply Smith Doc. 193)[1] and is ripe for consideration.

Smith has also filed three motions to supplement (Docs. 194, 195, and 197). With regard to the motions to supplement, the Court rules as follows: (1)

---

[1] Duffy has failed to respond in any way to Smith's motion(s). The Court deems Duffy's failure to respond to be an admission of the merits of Smith's motion insofar as they concern him. SDIL-LR 7.1(c).

Smith's request for the Court to take judicial notice of an order filed in a related proceeding (Doc. 194) is **GRANTED**[2] (2) Smith's motion to supplement the record with documents received on February 13, 2015 pertaining to Steele's divorce (Doc. 195) is **GRANTED**; and (3) Smith's motion to supplement the record with recently obtained evidence pertaining to Hansmeier (Doc. 197) is **GRANTED**.

The Court considers Smith's Motion for Reconsideration (Doc. 189) below.

## II.  BACKGROUND

### A. Overview

On December 14, 2011, plaintiff, Lightspeed Media Corporation ("Lightspeed"), filed suit in the Circuit Court of the Twentieth Judicial District in St. Clair County. Lightspeed owns or operates one or more paid-subscription adult entertainment websites. In its first complaint, Lightspeed alleged John Doe and more than 6,600 "co-conspirators" had gained unauthorized access to its website. On December 16, 2011, the circuit court granted an ex parte motion for leave to obtain discovery by subpoena, from dozens of Internet Service Providers ("ISPs"), of information personally identifying the defendants. AT&T and Comcast subsequently filed motions to quash the subpoenas and/or for a protective order. On May 22, 2013, the Illinois Supreme Court directed the circuit court to vacate

---

[2] Smith asks the Court to take judicial notice of an order filed in *Guava LLC v. Spencer Merkel*, No. 27-CV-12-20976 (4th Jud. Dist. Ct., Hennepin Cty., MN Jan. 20, 2015) (Doc. 194). *Guava LLC* involved Lightspeed's law firm, Prenda Law, John Steele, Paul Hansmeier, and related issues. Smith contends the Court may take judicial notice of the order under Federal Rule of Evidence 201(b)(2). The Court agrees that it may take judicial notice of the subject order to establish the fact of such litigation. However, the Court may not take judicial notice of the subject order to establish the truth of the matters asserted therein. Accordingly, the Court acknowledges the subject matter of the litigation in *Guava LLC.* However, the Court does not take judicial notice of the facts or conclusions contained therein and does not rely on the order in resolving the present motion to reconsider. *See Opoka v. Immigration and Naturalization Service*, 94 F.3d 392 (7th Cir. 1996).

its order denying the motion to quash.

On August 3, 2012, Lightspeed filed an amended complaint. The amended complaint substituted "Anthony Smith" for "john Doe." In addition, the amended complaint added AT&T, Comcast, AT&T Corporate Representative #1, and Comcast Corporate Representative #1 as defendants (collectively, "ISP Defendants"). In the amended complaint, Lightspeed contended that Smith used hacked passwords to access content from Lightspeed's websites without authorization. Lightspeed asserted the ISP Defendants improperly opposed Lightspeed's discovery, failed to act to protect Lightspeed's websites, and conspired with their customers to Lightspeed's detriment. Shortly thereafter, on August 9, 2012, AT&T removed the action to federal court.

Seven days after removal, Lightspeed filed an emergency motion for discovery (Doc. 9). In the emergency motion, Lightspeed asked the Court to order the ISP Defendants to provide information personally identifying ISP subscribers who were allegedly using hacked passwords to gain unauthorized access to Lightspeed's content. Judge G. Patrick Murphy held a hearing on the issue and denied the motion (Doc. 23). Smith and the ISP Defendants filed motions to dismiss (Docs. 26, 28, 36). On March 21, 2013, prior to the resolution of the motions to dismiss, Lightspeed entered a notice of voluntary dismissal.

On April 5, 2013, Smith moved for attorney's fees pursuant to 28 U.S.C. § 1927 (Doc. 61). Smith asked the Court to enter an order requiring Lightspeed's Counsel to satisfy personally the excess attorney's fees Smith reasonably incurred

because of their unreasonable and vexatious multiplication of the proceedings. Subsequently, the ISP Defendants also moved for attorney's fees (Docs. 78, 82).

On October 30, 2013, Judge Murphy granted Smith's motion for attorney's fees (Doc. 65). Lightspeed's Counsel sought reconsideration of that order (Docs. 66, 68, 74). On November 13, 2013, Judge Murphy held a hearing on the motions for reconsideration and the motions for attorney's fees by the ISP Defendants (Doc.96) in which he deferred ruling.

On November 27, 2013, Judge Murphy denied the motions to vacate, or in the alternative, reconsider the order granting Smith's motion for attorney fees, granted the ISP Defendants' motions for attorney's fees, and ordered Lightspeed's Counsel to pay attorney's fees totaling $261,052.11 (pursuant to 28 U.S.C. § 1927). The Fee Order was to be paid within 14 days.

As of December 27, 2013, Lightspeed's Counsel had not paid the Fee Order or sought a stay. Accordingly, Smith and the ISP Defendants filed a joint motion for contempt, or in the alternative, for an order directing Lightspeed's Counsel to show cause why they each should not be held in contempt (Doc. 107). Throughout this time period, Lightspeed's Counsel repeatedly asserted they had nothing – no money or assets to satisfy the Fee Order.

The Court heard argument on February 13, 2014. During the proceedings, Lightspeed's Counsel admitted on the record to noncompliance, each stating he had not paid the sanction amount to defendants or otherwise sought a supersedeas bond. Additionally, Lightspeed's Counsel emphatically indicated an

inability to pay. Steele and Hansmeier both asked the Court for leave to show they did not have the funds to satisfy the judgment. The Court denied Steele's motion to stay, and took the Contempt Motion under advisement, allowing Lightspeed's Counsel 10 days to submit asset statements from a certified public accountant. Thereafter, Lightspeed's Counsel submitted financial records to the Court for in camera review.

The Court issued its order addressing the Contempt Motion on March 24, 2014 (Doc. 136). As to the inability to pay arguments, the Court found Lightspeed's Counsel had not met the applicable burden. The Court concluded the records submitted by Lightspeed's Counsel were incomplete and suspicious. The Court found Lightspeed's Counsel in contempt and issued a sanction in the amount of 10% of the original sanction. On April 4, 2014, the Court granted Lightspeed's Counsel's motion to stay pending appeal and for approval of form of supersedeas bond (Doc. 148). Supersedeas bond was posted by Steele in the amount of $287,300.00 on April 8, 2014 (Doc. 149).

On appeal, the Seventh Circuit affirmed the original order of sanctions and the additional sanctions issued on March 24, 2014. Thereafter, on April 8, 2014, defense counsel collected on the bond (Doc. 149).

**B. Motion for Contempt (Doc. 135), Motion for Sanctions for Obstructing Discovery (Doc. 153), and Order denying the same (Doc. 188)**

On March 20, 2014 (prior to John Steele posting a supersedeas bond on April 8, 2014), Smith filed a Motion for Contempt (Doc. 135). Smith argued Lightspeed's Counsel made misrepresentations regarding their inability to pay the

Fee Order. Smith contended Lightspeed's Counsel was fully capable of paying the amounts ordered by the Court and had acted to conceal or otherwise move assets off-shore. The motion asked the Court for an order imposing additional sanctions for failing to pay as ordered;[3] freezing their assets; sanctioning them for interfering with discovery; and granting Smith access to the financial statements provided to the Court for in camera review.

On April 18, 2014, Smith filed a Motion for Sanctions for Obstructing Discovery (Doc. 153). Smith alleged Lightspeed's Counsel intentionally and improperly interfered with third-party subpoenas. The subject subpoenas were issued by Smith to ascertain facts concerning Lightspeed's Counsel's financial resources and their prior representations regarding inability to pay the Fee Order. Although the motion was directed against Steele, Duffy and Hansmeier, specific allegations of obstruction were limited to Steele and Duffy. Smith alleged that Steele and Duffy contacted involved third parties and misled them regarding the status of these proceedings and/or actively sought to obstruct discovery.

The Court held a hearing on the Motion for Contempt (Doc. 135) and the Motion for Sanctions for Obstructing Discovery (Doc. 153) on November 12, 2014. At the hearing, Lightspeed's Counsel denied making misrepresentations regarding their financial status. With regard to obstructing discovery, Steele and Duffy indicated they never intentionally made misrepresentations to third parties.

On November 18 2014, the Court issued an order denying Smith's motions for contempt and for sanctions (Doc. 188). The Court acknowledged a high degree

---

[3] As noted, at the time the motion was filed, the supersedeas bond had not been posted.

of suspicion as to Lightspeed's Counsel's conduct and in-court statements. However, the Court concluded Smith had not presented evidence sufficient to support a finding of contempt or warrant an imposition of sanctions.

**C. Motion for Reconsideration (Doc. 189)**

On December 15, 2014 Smith filed a Motion for Reconsideration (Doc. 189) seeking to correct errors of fact and to present newly discovered evidence. As noted above, the motion for reconsideration asks the Court to revisit its November 18, 2014 Order (Doc. 188) denying Smith's Motion for Contempt (Doc. 135) and Motion for Sanctions for Obstruction of Discovery (Doc. 153). Smith contends newly obtained and previously submitted evidence demonstrate (1) Lightspeed's Counsel had sufficient assets to pay the Fee Order and made misrepresentations to the Court regarding the same and (2) Lightspeed's Counsel obstructed discovery. With regard to the former, the evidence presented relates to Steele and Hansmeier. With regard to the latter, the evidence presented relates to Steele and Duffy. Smith contends the Court should reconsider its previous finding and impose sanctions, as appropriate, on Steel, Hansmeier, and Duffy.

## III.  APPLICABLE LAW

**A.  Motion for Reconsideration**

Although they are frequently filed, the Seventh Circuit describes a motion for reconsideration as "a motion that, strictly speaking, does not exist under the Federal Rules of Civil Procedure." *Hope v. United States*, 43 F.3d 1140, 1142 n. 2 (7th Cir. 1994). *See also Talano v. Northwestern Medical Faculty Foundation*,

*Inc.*, 273 F.3d 757, 760 n. 1 (7th Cir. 2001) ("Technically, a 'Motion for Reconsideration' does not exist under the Federal Rules of Civil Procedure."). This type of motion "is a request that the [court] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir.2004) (internal quotation omitted). Thus, a court "may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *U.S. v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). In *Frietsch v. Refco, Inc.*, 56 F.3d 825 (7th Cir.1995), the Court of Appeals did not question the availability of a motion to reconsider but stated:

> It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.

56 F.3d at 828. *See also Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir.1996) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion."); *Oto v. Metropolitan Life Insurance Company*, 224 F.3d 601, 606 (7th Cir.2000) (stating that a party cannot use a motion to reconsider "to introduce new evidence that could have been presented earlier").

There are two ways in which a Court may analyze a Motion to Reconsider,

under Rule 59(e) or under Rule 60(b) of the Federal Rules of Civil Procedure. Where, as here, a substantive motion for reconsideration is filed within twenty-eight days of entry of judgment or order, whether the motion is analyzed under Rule 59(e) or Rule 60(b) depends upon the substance of the motion, not the timing or label affixed to it.[4] Generally, if a motion is timely filed within the twenty-eight day period, the Court will construe it as a motion pursuant to Rule 59(e); later motions will be construed pursuant to Rule 60(b). *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994); *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1992). Although both Rules 59(e) and 60(b) have similar goals of erasing the finality of a judgment and permitting further proceedings, Rule 59(e) generally requires a lower threshold of proof than does Rule 60(b). *See Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1166 (7th Cir. 1995); see also *Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993) (distinguishing the "exacting standard" of Rule 60(b) from the "more liberal standard" of Rule 59(e)). Instead of the exceptional circumstances required to prevail under Rule 60(b), Rule 59(e) requires that the moving party clearly establish a manifest error of law or an intervening change in the controlling law or present newly discovered evidence. *See Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998). However, where "the only arguable basis for relief presented in the motion ... is 'excusable neglect,' "the court should apply the standards governing a motion under Rule 60(b)." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006).

---

[4] As of December 1, 2009, motions under Rule 59(e) mist be filed "no later than 28 days after the entry" of the challenged order.

Pursuant to Rule 59(e), the Court finds that reconsideration is appropriate based on the newly discovered evidence and facts detailed below that were not immediately evident to the Court when it previously considered Smith's motion for contempt and discovery sanctions.

## B. Discovery Sanctions

Federal Rule of Civil Procedure 37(b)(2)(C) gives a federal judge authority to "order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey a discovery order], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Although the language of Rule 37(b) requires violation of a judicial order in order to impose sanctions, a formal, written order to comply with discovery is not required, where a litigant engages in abusive litigation practices. *See Halas v. Consumer Services, Inc.*, 16 F.3d 161, 164 (7th Cir. 1994) ("a formal written order to comply with discovery requests is not required under Rule 37(b)").

Seventh Circuit law holds Rule 37 discovery sanctions "may only be imposed where a party displays willfulness, bad faith, or fault." *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir.1997) (*citing Philips Medical Systems Int'l, B.V. v. Bruetman,* 982 F.2d 211, 214 (7th Cir.1992)). District courts have broad discretion in deciding whether violation of rules of discovery warrants imposition of sanctions. *Matei v. Cessna Aircraft Co.*, 35 F.3d 1142 (7th Cir. 1994). However, Rule 37 essentially mandates sanctions for substantial unjustified discovery abuses. *See Rickels v. City of South Bend, Ind.* 33 F.3d 785, 786-87

(7th Cir. 1994) ("The great operative principle of Rule 37(a)(4) is that the loser pays. Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims.") (internal quotation and citation omitted).

Rule 37 requires no evidentiary hearing, and none is warranted where the briefs and affidavits fully recount the circumstances surrounding the noncompliance. *See Margoles v. Johns*, 587 F.2d 885, 889 (7th Cir. 1978); *see also Godlove v. Bamberger*, 903 F.2d 1145, 1149 (7th Cir. 1990); *Loctite Corporation v. Fel–Pro, Inc.*, 667 F.2d 577, 583 n. 6 (7th Cir. 1981).

Additionally, under 28 U.S.C § 1927, An attorney who multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such a conflict." *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1183 (7th Cir. 1992).


**C.    Civil Contempt**

Federal courts have both inherent and statutory authority to punish for contempt and to coerce compliance with their orders. *International Union, UMWA v. Bagwell*, 512 U.S. 821, 831-833 (1994). To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that: (1) a court order sets forth an unambiguous command; (2) the

alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply. *S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

## IV. ANALYSIS

### A.  Discovery Obstruction (Duffy and Steele)

In his motion for reconsideration (Doc. 189), Smith sheds new light on Duffy and Steele's efforts to obstruct discovery by misleading subpoenaed banking institutions. Smith refutes assertions made by Duffy and Steele at the November 12, 2014 hearing that they did not intentionally mislead any third party institutions about the status of the discovery subpoenas. Specifically, Smith presents new information pertaining to Steele and Duffy's communication with JP Morgan/Chase. This new information demonstrates that, on January 29, 2014, Steele informed JP Morgan he intended to file a motion to quash subpoenas issued by Smith requesting Lightspeed's counsel's financial records. The following day, Steele sent a copy of said motion to JP Morgan without a file stamp. Several days later, JP Morgan requested a file stamped copy from Duffy. Duffy finally supplied a file stamped copy of the motion to quash on March 3, 2014 - two weeks after the Court had **denied** the motion and allowed discovery to proceed. Without any defense from Duffy,[5] the Court takes his actions as intentionally obstructive, as he had reason to know the motion to quash had been denied at the

---

[5] As previously noted, Duffy has failed to respond in any way to Smith's motion(s). The Court deems Duffy's failure to respond to be an admission of the merits of Smith's motion insofar as they concern him. SDIL-LR 7.1(c).

time he relayed it to the bank.

Smith also points to communications in the record between Steele and Sabadell United Bank on April 16, 2014 (Doc. 158-1), in which Steele said the subpoena matter was stayed on April 4, 2014. Just five days before, Steele acknowledged that the Court's stay order did not pertain to the subpoenas, but rather a joint motion for contempt that had been filed by Smith weeks earlier. Steele agreed to resolve any misunderstandings about the subpoenas being withdrawn, but he clearly did not do so based on his April 16th email to Sabadell Bank. Despite Steele's explicit knowledge that discovery of his financial records had not been stayed, he proceeded to inform the bank that a stay was in place. This demonstrates his knowing interference in Smith's discovery efforts.

Based on the above, the Court finds that Duffy and Steele both engaged in unreasonable, willful obstruction of discovery in bad faith. As such, discovery sanctions are warranted as to Duffy and Steele.

**B.     Contempt (Hansmeier and Steele)**

Smith also provides the Court with newly discovered financial evidence to support his assertion that, despite their pleas of insolvency, Steele and Hansmeier had sufficient assets to satisfy the Fee Order. On January 29, 2014 Steele and Hansmeier both signed and filed memoranda claiming the Court's sanction posed a "crippling financial liability" on them (Doc. 113, 115). Similarly, at a hearing on February 13, 2014, they asked the Court for leave to show inability to pay (Doc. 101).

With regard to Steele, new evidence reveals that, in the two months before he filed his memorandum on January 29, 2014, he deposited over $300,000 into a new bank account with Sabadell Bank (Doc. 190 Ex. A). Moreover, within a month of asking the Court for leave to show his insolvency, Steele wrote checks totaling nearly $200,000, some of which were written to himself, for expenses related to home renovations. Between April and September of that year, Steele had deposits in that account totaling over $100,000. Steele briefly held a second account with Sabadell between September and October, into which he deposited $50,000, most of which he paid out to himself. Smith additionally points out that the value of Steele's home more than doubled from April 2013 (when he purchased it) to October 2014 (when it was on the market). Further, on November 12, 2014, Steele still pled insolvency. Yet, just one month later, he represented in his divorce proceeding that his assets approached $1.3 million (Doc. 195-1).

As to Hansmeier, Smith presents evidence that, in the years leading up to the judgment against him, Hansmeier had transferred nearly half a million dollars to a company called Monyet LLC (Doc. 172-21), of which Hansmeier was the sole member, manager, and signatory for its accounts ((Doc. 197-2). In a debtor's exam of a related proceeding in June 2014,[6] Hansmeier admitted that Monyet, LLC was set up as a trust for his son for purposes of estate planning (Doc. 190 Ex. D 38:11-12, 18). However, documents from Scottrade, Inc. reveal that

---

[6]   The debtor's exam took place in a Minnestoa district court. While the statements made by Hansmeier therein were not made in this court, they are nonetheless directly relevant to the financial discovery being conducted by this court. As they were made by Hansmeier himself, the Court will accept them as true for the purposes of the instant motion to reconsider.

Monyet, LLC was not solely associated with estate planning, as the bulk of its assets went towards expenses such as payment of appellate bonds and attorney's fees, investments in Liverwire Holdings, LLC, and loans to his Class Justice LLC law firm (Doc. 190-3). Said expenditures occurred throughout the 2013 year and up to May 2014, demonstrating that Hansmeier had access to the Monyet funds both before and after he pled insolvency to the court.

In light of the above facts, the Court finds Steele and Hansmeier in contempt. The Court finds that the newly discovered evidence directly contradicts their claims of insolvency.

## V.  CONCLUSION

For the reasons discussed herein, Anthony Smith's Motion for Reconsideration (Doc. 189) is **GRANTED**. **FURTHER,** the Court **ORDERS** as follows:

**Sanctions as to John Steele and Paul Duffy for Obstructing Discovery:**

The Court finds Paul Duffy and John Steele engaged in unreasonable, willful obstruction of discovery in bad faith. As such, discovery sanctions are warranted against Paul Duffy and John Steele. The Court awards sanctions to Anthony Smith in the amount of the additional expenses incurred in conducting third party discovery, apportioned equally between Paul Duffy and John Steele.

**FURTHER**, with regard to these sanctions, the Court orders Anthony Smith to submit reasonable costs by July 3, 2015.

**Sanctions as to John Steele and Paul Hansmeier – Contemptuous Conduct:**

The Court finds John Steele and Paul Hansmeier in contempt. Accordingly, the court awards sanctions against John Steele and Paul Hansmeier in the amount of $65,263.00. for their contemptuous statements in court. One might recognize that the amount of the sanction is twenty-five percent of Judge Murphy's original sanction and that the last sanction from the undersigned was ten percent. A pattern is purposely developing whereby the contemnors could find their way back to the full sanction Judge Murphy ordered for their original wrongdoing if they continue their misdeeds before this Court. The current sanction, including the costs addressed above, shall be paid on or before July 15, 2015.

**IT IS SO ORDERED.**

Signed this 5th day of June, 2015.

Digitally signed by
David R. Herndon
Date: 2015.06.05
15:57:49 -05'00'

**United States District Court**

ORDER re 200 Response to 199 filed by Anthony Smith
submitting expenses, costs and fees. The Court awards
sanctions against Steele and Duffy in the amount of
$94,343.51, apportioned equally between Steele and Duffy.
The sanctions shall be paid on or before August 10,
2015.Signed by Judge David R. Herndon on 7/23/2015.
(dsw)THIS TEXT ENTRY IS AN ORDER OF THE
COURT. NO FURTHER DOCUMENTATION WILL BE
MAILED. (cekf, ). (Entered: 07/23/2015)