NOS. 15-2440 and 15-2682

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

LIGHTSPEED MEDIA CORPORATION,
*Plaintiff,*

v.

ANTHONY SMITH, et al.,
*Defendants-Appellees,*

Appeal of:
JOHN STEELE, & PAUL HANSMEIER,
*Appellants.*

On Appeal from the United States District Court
for the Southern District of Illinois, No. 3:12-cv-00889-DWH-SCW

**Reply Brief of
Appellants John Steele & Paul Hansmeier**

Paul Hansmeier
100 5th St. S. Suite 1900
Minneapolis, MN 55402
(612) 234-5744

John Steele
500 Michigan Ave., Suite 600
Chicago, IL 60611
(312) 396-4154

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES ..........................................................................ii

ARGUMENT .................................................................................................1

I.      The $65,263 Contempt Fine Entered Against Hansmeier Must Be
Vacated .......................................................................................................1

     A.   The District Court Abused Its Discretion By Considering The
Evidence Smith Relied On In His Motion For Reconsideration
Against  Hansmeier .....................................................................1

     B.   The District Court Erred In Its Interpretation Of The Documents
Attached To Smith's Motion For Reconsideration Against
Hansmeier ....................................................................................4

     C.   Contempt Was Not An Available Remedy With Respect To
Hansmeier's Statements To The District Court ..........................5

II.     The $65,263 Contempt Fine Entered Against Steele Must Be Vacated.........11

III.    The District Court Erred By Imposing A $94,343.51 Discovery
Sanction On Steele ................................................................................. 11

     A.   The District Court Should Not Have Relied On The Documents
Smith Submitted In Connection With His Motion For
Reconsideration Against Steele .................................................12

     B.   Steele Did Not Engage In Discovery Misconduct ....................13

     C.   The District Court's Award Of $94,343.51 In Discovery Sanctions
Was Grossly Excessive .............................................................15

IV.   Public Policy Favors Reversal Of The District Court's Order .........................16

CONCLUSION............................................................................................ 20

Certificate of Compliance ......................................................................... 21

## TABLE OF AUTHORITIES

*Confold Pac., Inc. v. Polaris Indus.*,
  433 F.3d 952 (7th Cir. 2006) ............................................................... 8

*Domanus v. Lewicki*,
  742 F.3d 290 (7th Cir. 2014) .............................................................. 9

*Florin v. Nationsbank of Ga., N.A.*,
  60 F.3d 1245 (7th Cir. 1995) ............................................................. 9

*FTC v. Trudeau*,
  579 F.3d 754 (7th Cir. 2009) ....................................................... 9, 10

*Jones v. Lincoln Elec. Co.*,
  188 F.3d 709 (7th Cir. 1999) ...................................................... 9, 10

*Lightspeed Media Corp. v. Smith*,
  761 F.3d 699 (7th Cir. 2014) ........................................................ 6, 7

*Musch v. Domtar Industries, Inc.*,
  587 F.3d 857 (7th Cir 2009) .............................................................. 4

*Powell v. AT&T Comm., Inc.*,
  938 F.2d 823 (7th Cir. 1991) ........................................................... 13

*S.E.C. v. First Choice Management Services, Inc.*,
  709 F.3d 685 (7th Cir. 2013) ........................................................ 7, 9

*Sigworth v. City of Aurora*,
  487 F.3d 506 (7th Cir. 2011) ............................................................. 4

*Walker v. Soo Line R.R. Co.*,
  208 F.3d 581 (7th Cir. 2000) ........................................................... 13

*Young v. United States ex rel. Vuitton Et Fils S.A.*,
  481 U.S. 787 (1987) ......................................................................... 18

## ARGUMENT

This appeal concerns the propriety of two sanctions: a $65,263 contempt fine entered jointly and severally against Appellants Paul Hansmeier and John Steele; and a $94,343.51 discovery sanction apportioned equally between Appellant Steele and a recently-deceased attorney, Paul Duffy. Below, Appellants address Appellee Anthony Smith's attacks on Appellants' identifications of error, respectively.

## I. The $65,263 Contempt Fine Entered Against Hansmeier Must Be Vacated

### A. The District Court Abused Its Discretion By Considering The Evidence Smith Relied On In His Motion For Reconsideration Against Hansmeier

The district court abused its discretion by considering the documents Smith relied on in his motion for reconsideration against Hansmeier. These documents did not meet the standard for new evidence on reconsideration, *i.e.* that evidence be newly discovered and could not have been discovered with reasonable diligence prior to the November 12, 2014 hearing. *Caisse Nationale de Credit Agricole v. CBI Indus.,* 90 F.3d 1264 (7th Cir. 1996).

Smith's response brief fails to demonstrate that Smith exercised reasonable diligence in obtaining the financial records he attached to his motion for reconsideration. Smith's motion for reconsideration relied on documents Smith obtained from: (a) TCF Bank; (b) Scottrade, Inc.; and (c) testimony at a June 30, 2014 hearing. AA77-122.

Smith's brief states that Smith was in possession of TCF Bank records in March 2014. Resp. Br. 36 ("Smith obtained and reviewed responsive documents from TCF on March 19, 2014.") There is no reason Smith could not have presented these documents at the November 12, 2014 hearing. The same is obviously true for the June 30, 2014 hearing testimony, a transcript of which could have been ordered on the very day that the testimony was given (and which Smith does not deny having prior to the November 12, 2014 hearing).

As for the Scottrade documents, Smith apparently learned about Monyet's Scottrade account after following up with TCF Bank in January 2015. Resp. Br. 37 ("Smith's counsel conferred with TCF about its incomplete discovery responses, which at first failed to include some Monyet documents."). The only explanation Smith provides for why he waited nearly one year to follow up with TCF Bank is a reference to Hansmeier's "second motion to quash." Resp. Br. 37. Yet, Hansmeier's second motion to quash was not issued with respect to TCF documents. *See* Dkt. 157-1, at 6 (listing entities to which Smith issued "stealth" subpoenas.) Instead, it was limited to post-March 2014 subpoenas that Smith issued without notifying Hansmeier. *Id.* Thus, nothing about Hansmeier's second motion to quash would have prevented Smith from following up with TCF Bank prior to the November 12, 2014 hearing. It is also worth mentioning that the district court never granted Smith's repeated efforts to claim that Hans-

meier somehow interfered with discovery. There was literally nothing standing in the way of Smith's receipt of the Scottrade documents prior to the November 12, 2014 hearing—except, of course, Smith's lack of diligence.

In addition to lack of diligence, another reason appears in the record for why Smith failed to obtain the Scottrade documents prior to November 12, 2014. Smith did not follow up with TCF Bank, and thus learn about the Scottrade documents, until *after* the district court denied Smith's second motion for contempt. AA63 (providing January 28, 2015 entry regarding TCF follow-up). Smith's original trial strategy was focused on proving Smith's (false) suspicion that Appellants had stashed millions of dollars in overseas bank accounts. Thus, once Smith's original trial strategy flopped, he started taking more discovery in an effort to develop a new trial strategy. After he obtained this discovery he used his "motions for reconsideration" as a vehicle for presenting his new trial strategy. This is not a proper use of motions for reconsideration.

Smith cannot show that he acted with "reasonable diligence," as the law requires. Two categories of documents that Smith attached to his motion for reconsideration were in his possession before the November 12, 2014 hearing. The final category, *i.e.* the Scottrade documents, would have been in Smith's possession had Smith followed up with TCF Bank prior to November 12, 2014. A motion for reconsideration cannot be employed as a

vehicle to introduce new evidence that could have been adduced during the pendency of a case. *Musch v. Domtar Industries, Inc.*, 587 F.3d 857, 861 (7th Cir 2009); *Sigworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2011). Smith's evidence violates this standard.

## B.    The District Court Erred In Its Interpretation Of The Documents Attached To Smith's Motion For Reconsideration Against Hansmeier

The district court failed to identify a single false statement Hansmeier made. The district court's order focused on two specific statements. First, the order referenced a January 29, 2014 memorandum of law in which Hansmeier stated that the $261,025.11 sanction would impose a "crippling financial liability" on him. SA-1. Second, the order referenced Hansmeier's request "for leave to show inability to pay." *Id.* The district court did not expressly show or find that either of these statements was false.

Smith attempts to cure this problem by inventing a new reason for why the district court imposed contempt sanctions. According to Smith's response brief, the district court held Appellants in contempt for "submitting misleading, materially incomplete documents that concealed their recent expenditures." Resp. Br. 8.[1] Smith's assertion is utterly false.

---

[1] *See also* Resp. Br. 10 ("Hansmeier and Steele did not adequately account for funds they had dissipated in the intervening months."); Resp. Br. 21-22 ("When ordered to disclose their financial resources, [Appellants] concealed their recent expenditures' extent and purpose. Their contempt lay not just in lies and misrepresentations but in materially misleading statements and deceptive disclosures to the court…");

The district court did not find that Appellants' statements of financial position were misleading or materially incomplete—even after being presented with voluminous documents detailing Appellants' finances. *See* SA-1. Nothing else in the record supports a finding that Appellants' statements of financial position were inaccurate.

From Appellants' perspective, this is one of the most unexplainable aspects of the district court's order. Appellants made detailed financial disclosures to the district court that were prepared by a certified public accountant. The district court did not find that these disclosures were false or misleading.

Instead, the district court resorted to Appellants' generic statements and requests for leave to present a defense—all of which occurred prior to the district court's receipt of Appellants' statements of financial position.

## C.    Contempt Was Not An Available Remedy With Respect To Hansmeier's Statements To The District Court

Hansmeier, in the strongest possible terms, denies making false statements to the district court. Beyond the factual question of truthfulness, however, is the legal question of whether contempt was an available remedy under the law. It was not. The district court was required to provide mandatory due process protections before imposing the criminal con-

---

Resp. Br. 26 n.22 ("The 2015 sanction redresses distinct contemptuous acts of misleading the court to cloak their ability to pay.").

tempt sanction it imposed below. However, even if this Court construes the district court's sanction as a civil contempt sanction, civil contempt was not an available remedy under the law.

### 1. The District Court Failed To Provide Hansmeier With Mandatory Due Process Protections Prior To Imposing A Contempt Fine

In challenging Appellants' assertion that the district court's use of a 25% multiplier gave rise to a criminal sanction, Smith relies heavily on this Court's rejection of a superficially similar argument with respect to the district court's prior imposition of a 10% multiplier. *See Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 712 (7th Cir. 2014) ("Lightspeed I") (holding that a 10% multiplier was remedial because it was paid to defendants and it corresponded to the attorneys' fees and costs incurred by defendants during the course of litigating the contempt motion).

The critical difference between this case and *Lightspeed I* is that in this case the district court did not use the 25% multiplier to approximate Smith's harm. Instead, the district court expressly used the 25% multiplier to deter future misconduct. As the district court explained, "[o]ne might recognize that the amount of the sanction is twenty-five percent of Judge Murphy's original sanction and that the last sanction from the undersigned was ten percent." SA-1. The district court further explained, "[a] pattern is purposefully developing whereby the contemnors could find

themselves back to the full sanction Judge Murphy ordered for their orig-
inal wrongdoing if they continue their misdeeds before the Court." SA-1.

The district court did not intend the sanction to be compensatory. The
district court's order described a purposeful pattern of increasing multi-
pliers and incorporated a threat of even larger multipliers if Appellants
upset the district court again—all without any reference to a compensato-
ry motive. It is black letter law that a district court is required to explain
"what loss the sanction is intended to compensate for." *S.E.C. v. First
Choice Management Services, Inc.*, 709 F.3d 685 (7th Cir. 2013). The dis-
trict court did not do so here.

Another distinction between this case and *Lightspeed I* is that Smith
has already recovered the attorneys' fees associated with his renewed mo-
tion for contempt via the district court's $94,343.51 discovery sanction.
Thus, even if this Court were willing to overlook the district court's state-
ments regarding deterrence, it would nevertheless be constrained to find
that Smith has been fully compensated for his "harm" and that the
$65,263 sanction therefore does not serve a compensatory purpose. No-
where in his brief does Smith even suggest that the $65,623 sanction
compensates him for harm he suffered; indeed, he spends a good part of
his brief attempting to misstate the law regarding civil contempt sanc-
tions, *i.e.* the false statement that a civil contempt sanction need not be

linked to harm. Resp. Br. 27 ("Civil contempt does not require such a link.").

Smith takes several other stabs at justifying the district court's use of a 25% multiplier, but each of these attempts misses its target. First, Smith points to the profit Steele turned on the sale of his house and suggests that the Court could justify the $65,263 sanction via an unjust enrichment theory. Resp. Br. 24-26. This argument hardly merits a response.

To the extent that a response is warranted, Hansmeier would note: (a) Hansmeier did not profit from the appreciation in the value of Steele's home and therefore the sanction against him cannot be justified under this theory; (b) Smith's unjust enrichment theory, *i.e.* Steele committed money to his home rather than timely paying a sanction, overlooks the fact that Steele was previously sanctioned for not timely paying the sanction and that "payment delay" is not a basis for sanctions in this case; and (c) all of the cases cited by Smith relate to circumstances where a party alleged an unjust enrichment claim in a complaint or disobeyed an injunction, and profited as a result—circumstances which are not present here. *E.g.* Resp. Br. 25 (citing *Confold Pac., Inc. v. Polaris Indus.*, 433 F.3d 952 (7th Cir. 2006) (deciding appeal from diversity suit alleging breach of contract and unjust enrichment); and *FTC v. Trudeau*, 579 F.3d 754 (7th Cir.

2009) (unjust enrichment proper sanction where Trudeau violated an injunction against false advertising)).

Second, Smith attempts to distinguish *Jones v. Lincoln Electric Co.*, 188 F.3d 709 (7th Cir. 1999). Resp. Br. 25. Yet, Hansmeier did not cite *Jones* for the proposition that the contempt sanction was a criminal sanction. Instead, Hansmeier cited *Jones* for the proposition that a district court's civil contempt power does not extend to coercing "truthful" testimony from witnesses.

Third, Smith suggests that the district court was within its discretion to impose escalating contempt sanctions, irrespective of Smith's harm. Yet, none of the cases cited by Smith actually stands for this proposition. For example, in *Domanus v. Lewicki*, 742 F.3d 290, 297-98 (7th Cir. 2014), the escalating sanctions were discovery sanctions, not civil contempt sanctions. While a civil contempt sanction was imposed, it was one of a series of escalating sanctions that the district court imposed in response to grave discovery misconduct. The $65,263 sanction in this case is not related to discovery misconduct. *Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245 (7th Cir. 1995) was a case involving attorneys' awardable to class counsel at the conclusion of class action; the term "contempt" does not appear in the opinion. *SEC v. First Choice Management Services,* 709 F.3d 685 (7th Cir. 2013), the court affirmed a district judge who made findings linking the sanction imposed to the harm allegedly suffered.

Smith's response brief provides no reason for this Court to conclude that the district court's sanction was a civil sanction. The criminal contempt sanctions imposed by the district court must be vacated because "criminal sanctions require certain constitutional safeguards before they are imposed (e.g., right to counsel, notice of charges, double jeopardy, proof beyond a reasonable doubt)." *Trudeau,* 579 F.3d at 769. It is beyond serious question that the proceedings below had "none of the bells and whistles of a criminal trial." *Id.* Because these mandatory safeguards were not provided below, the criminal contempt sanction imposed on Hansmeier must be vacated.[2]

## 2. Civil Contempt Is Not An Available Remedy With Respect To Hansmeier's Statements To The District Court

If this Court characterizes the district court's contempt sanction as a civil contempt sanction, notwithstanding the district court's "purposeful pattern" statements, the sanction must nevertheless be vacated. Civil contempt was not an available remedy with respect to Hansmeier's statements to the district court. *Jones v. Lincoln Elec. Co.*, 188 F.3d 709 (7th Cir. 1999).

Smith attempts to distinguish *Jones* on the grounds that neither Steele nor Hansmeier appeared as sworn witnesses under cross-examination at an evidentiary hearing. Resp. Br. 25-26. This is a distinction without a

---

[2] By way of a single example, Hansmeier did not receive a hearing with respect to the

meaning. For the same reason why it would be inappropriate to vest district courts with the power to coerce "truthful" testimony, it is equally inappropriate to vest district courts with the power to coerce arguments that the district court agrees with.

Smith fails to identify any order that was frustrated as a result of Hansmeier's statements. All that Smith says is, "Adhering to that specious defense through the November 2014 show-cause hearing, and fighting tooth-and-nail against discovery that debunked the defense, undeniably 'obstructed or halted the judicial process.'" Resp. Br. 26. Assuming that Smith is referring to the October 2013 order to pay over $261,025.11 in sanctions, Smith has already been compensated for whatever harm he suffered in connection with the delay of that payment, *i.e.* the district court already imposed a civil contempt sanction for that harm.

## II.   The $65,263 Contempt Fine Entered Against Steele Must Be Vacated

For the very same reasons presented in Sections I.A, I.B and I.C, *supra*, the $65,263 contempt fine entered against Steele must be vacated.

## III.   The District Court Erred By Imposing A $94,343.51 Discovery Sanction On Steele

The district court erred by imposing a $94,343.51 discovery sanction on Steele. The district court should not have relied on the documents Smith submitted in connection with his motion for reconsideration against

Steele. Steele did not engage in discovery misconduct. $94,343.51 was a grossly excessive award.

### A. The District Court Should Not Have Relied On The Documents Smith Submitted In Connection With His Motion For Reconsideration Against Steele

For the reasons stated in Section I.A, *supra*, the district court erred by considering the documents Smith submitted in his motion for reconsideration against Steele.

In his response, Smith does not deny that the relevant documents were actually before the district court prior to the November 12, 2014, hearing. Smith justifies the district court's reconsideration of those documents by explaining how Smith's motion for reconsideration, "connected the dots between Steele's denial that he advised banks how to interpret the stay order, his actual message to Sabadell, and his boast to Smith's counsel that the 'subpoenas must be withdrawn.'" Resp. Br. 34-35.

But that is not the legal standard applicable to motions for reconsideration. Reconsideration does not allow litigants to present arguments that could have presented at a hearing (thus allowing for proper rebuttal); as was discussed more extensively in Appellants' opening brief, reconsideration exists, in part, to allow district courts to correct manifest errors of fact. The district court did not and could not find that it previously manifestly errored in its consideration of the record before it. At most, the dis-

trict court held that Smith's submissions "shed new light" on Steele's conduct. A failure to properly apply the law or make necessary findings is an abuse of discretion. *See Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 590 (7th Cir. 2000); *Powell v. AT&T Comm., Inc.*, 938 F.2d 823, 825 (7th Cir. 1991). The district court abused its discretion in this regard.

### B.    Steele Did Not Engage In Discovery Misconduct

The district court's order alludes to two forms of discovery misconduct by Steele. First, the order describes communications Steele had with JP Morgan/Chase on January 29, 2014. Second, the order describes communications Steele had with Sabadell United Bank.

Smith's sole rebuttal to Steele's position regarding JP Morgan is that the district court "properly exercised its discretion in finding Steele's first salvo to JP Morgan left him culpable for participating in interference with Duffy." Resp. Br. 28. The district court did not make this finding. Instead, the district court apportioned liability for the $94,343.51 sanction equally between Steele and Duffy, not jointly and severally. Smith has no other response to the substance of Steele's argument.

As for Sabadell, Smith frivolously asserts that Steele told Sabadell and other third parties not to respond to discovery. Resp. Br. 29 n.2. Steele never told a third party not to respond to discovery. The only evidence of "discovery obstruction" with respect to Sabadell, is Steele's provision of a

court order to a sophisticated third party who asked for a copy of it. Steele never asserted that the court order relieved Sabadell of its discovery obligations.

Nor did Steele's communications delay Sabadell's production. A review of Smith's time records provides an explanation for why Sabadell's production was delayed: a pending motion to quash. On April 22, 2014, Smith's counsel conferred with Sabadell regarding Steele's discovery obstruction. AA-58. On April 23, 2015, Smith's counsel worked on drafting an opposition to "Prenda's motion to quash." AA-58. Smith had no further contact with Sabadell until October 27, 2014, when Smith "confer[red] with Sabadell re: order denying motion to quash," and "subpoena compliance." AA-61. On or before, November 14, 2015, Smith had the Sabadell documents in hand. AA-60.

Despite conferring with Sabadell several times regarding "Steele's obstruction," there is no evidence in the record from Sabadell that it delayed discovery as a result of Steele's fax. For example, if Steele's communications with Sabadell had delayed Sabadell's production, then Smith could easily have obtained a declaration or other testimony from Sabadell to that effect. Instead, Smith's own time records show that Sabadell's actions were attributable to pending motions to quash. It was Smith's burden to provide evidence that Steele's efforts obstructed discovery. Smith provided none.

## C.   The District Court's Award Of $94,343.51 In Discovery Sanctions Was Grossly Excessive

Smith's response brief does not go beyond the reasoning presented in the district court's untimely order or specifically address any of the points raised in Steele's challenge to the $94,343.51 discovery sanction award. All Smith does is note that half of the $94,343.51 award was apportioned to Steele, argue that all of his discovery costs and expenses should be awardable given the sanctioned attorneys' refusal to pay the sanctions award (even though they did, in fact, pay the sanction award and even though they were already sanctioned for failing to timely pay the sanctions award), and restate the legal standard governing sanctions under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 37.

Critically, Smith does nothing to explain why he continued to take discovery after the sanctions award was fully secured with an appellate bond, or explain why he should be awarded costs and fees associated with discovery that occurred prior to any alleged obstruction even occurring; all Smith does on this point is state that "only" $4,744.40 in fees predate the date of the first alleged obstruction. Resp. Br. 33. Nor does Smith explain why discovery that had literally nothing to do with JPMorgan/Chase or Sabadell Bank, *i.e.* the only discovery that the district court found was obstructed, can possibly under any theory give rise to recoverable fees and costs.

In his original motion for discovery obstruction, Smith estimated the costs and expenses attributable to Steele and Duffy's so-called discovery obstruction to be $4,908. AA-41. The district court manifestly erred by awarding Smith costs and fees nearly *twenty times* this amount without providing a legally or factually cognizable justification for doing so. It is worth emphasizing that the district court did not reduce Smith's fee petition by even a single penny, and hastily entered an order explaining its reasoning only after Steele's request for a stay pending appeal alerted the district court to the fact that it had not even entered anything beyond a minute entry granting Smith's fee request in its entirety.

## IV.    Public Policy Favors Reversal Of The District Court's Order

Public policy favors reversal of the district court's order. None of policies underlying 28 U.S.C. § 1927, Federal Rule of Civil Procedure 37, or the district court's inherent contempt power were served by the renewed contempt proceedings below. Instead, the renewed contempt proceedings only served to serve Smith's "commitment to expose [Appellants'] misdeeds." Resp. Br. 27. Smith is not a prosecutor; the use of the federal courts by a private litigant for this purpose is wildly, wildly inappropriate.

In October 2013, the district court imposed a sanction for violations of 28 U.S.C. § 1927. AA-6. Then, when the sanction went unpaid, the district court held a show cause hearing at which Appellants requested an opportunity to present an inability to pay defense. AA-19. The district court or-

dered them to submit statements of financial condition prepared by a third-party Certified Public Accountant. Appellants did so.

After reviewing Appellants' financial statements, the district court held that the statements did not satisfy Appellants' burden of proof with respect to an inability to pay defense. AA-21. The district court determined that Appellants were in contempt and imposed a sanction to compensate Smith and others for the harm imposed on them by the delay in Appellants' obligation with payment of the original sanction. *Id.* Shortly thereafter, Appellants posted an appellate bond in the full amount of the amount owed. When those sanctions were affirmed by this Court, the aggrieved parties, Smith included, collected the money they were owed.

Appellants' posting of a full appellate bond, *i.e.* their full compliance with the district court's order, should have ended the contempt proceedings. But it didn't. Acting *sua sponte*, the district court elected to reinterpret a brief submitted by Anthony Smith as a renewed motion for contempt. *Id.* However, Smith's brief was, in fact, a brief submitted to challenge Appellants' inability to pay defense. Given that the district court had rejected Appellants' inability to pay defense, Smith's challenge to Appellants' inability to pay defense was essentially moot.

By re-characterizing Smith's brief as a motion for renewed contempt, the district court teed up a second round of contempt proceedings—which

lasted over one year, consumed substantial private and public resources, and served no legally cognizable purpose other than to satisfy Smith's personal "commitment to expose [Appellants'] misdeeds." Resp. Br. 27.

In other words, even though Smith had been made whole by Appellants' posting of an appeal bond, the district court appointed Smith's counsel to serve the role of a *de facto* prosecutor to investigate further misconduct on the part of the Appellants. This particular deficiency was "an error whose effects are pervasive. Such an appointment calls into question, and therefore requires scrutiny of, the conduct of an entire prosecution, rather than a discrete prosecutorial decision." *Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 812 (1987). This breach of constitutional rights is so major that the Supreme Court has held that it cannot constitute harmless error.

The district court justified the renewed contempt proceedings by raising the concern that Appellants had made misstatements regarding their financial position. Yet, as set forth in Appellants' opening brief, district courts cannot punish false statements with contempt. To be sure, there are many serious consequences with making false statements to a court. A contempt sanction in the amount of $65,263 or a discovery sanction in the amount of $95,343.51 is simply not one of them.

The proceedings below should have ended when Appellants posted the full amount of the sanction award. The district court's decision to further elongate the sanctions proceedings was not a sound use of public resources.

## CONCLUSION

This Court should vacate the $65,263 contempt fine entered against Hansmeier and Steele and the $94,343.51 discovery sanction entered against Steele.


DATED: December 14, 2015

/s/ Paul Hansmeier
Paul Hansmeier
100 5th St. S., Suite 1900
Minneapolis, MN 55402
*In propria persona*

/s/ John Steele          (with consent)
John Steele
500 Michigan Ave., Suite 600
Chicago, IL 60611
(312) 396-4154

### Certificate of Compliance
### With Type-Volume Limitation, Typeface
### Requirements, And Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,838 words, including headings, footnotes, and quotations, and excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Office Word 2016 with 12-point Century Schoolbook font.

DATED: December 14, 2015

/s/ Paul Hansmeier
Paul Hansmeier
100 5th St. S. Suite 1900
Minneapolis, MN 55402
612-234-5644.