In the

# United States Court of Appeals

## For the Seventh Circuit

―――――――――――――

Nos. 15-2440 & 15-2682

LIGHTSPEED MEDIA CORPORATION,

*Plaintiff,*

*v.*

ANTHONY SMITH, *et al.*,

*Defendants-Appellees,*

Appeals of JOHN STEELE and PAUL HANSMEIER,

*Appellants.*

―――――――――――――

Appeals from the United States District Court for the
Southern District of Illinois.
No. 3:12-cv-889-DRH-SCW — **David R. Herndon**, *Judge.*

―――――――――――――

ARGUED FEBRUARY 18, 2016 — DECIDED JULY 19, 2016

―――――――――――――

Before WOOD, *Chief Judge*, and KANNE and SYKES, *Circuit Judges*.

WOOD, *Chief Judge*. When last we considered John Steele and Paul Hansmeier's challenges to contempt sanctions imposed on them, we gave them some friendly advice: stop digging. See *Lightspeed Media Corp. v. Smith*, 761 F.3d 699 (7th Cir.

2014) (*Lightspeed I*). Apparently they did not realize that we meant what we said. Hoping to avoid paying additional sanctions, they dissembled to the district court and engaged in discovery shenanigans. Anthony Smith, a defendant in the underlying litigation, found out what was going on and moved for yet more contempt and discovery sanctions against Steele, Hansmeier, and Paul Duffy. (We occasionally refer to them collectively as the Attorneys.) Although the district court initially denied his request, it granted Smith the requested sanctions on a motion for reconsideration. Duffy is now deceased and so beyond our jurisdiction. Hansmeier and Steele have appealed, arguing that the district court erred in (1) revisiting its initial ruling on Smith's motion; (2) finding the Attorneys in contempt; and (3) sanctioning the attorneys for discovery misconduct. With regard to Steele, we affirm the district court's discovery sanction and vacate its contempt sanction. We dismiss Hansmeier's appeal.

**I**

For present purposes, only a précis of this case's origin is necessary. (A detailed account may be found in *Lightspeed I*.) Hansmeier, Steele, and Duffy were the members of a shifting and overlapping set of law firms and business entities that a district court dubbed a "porno-trolling collective." *Ingenuity 13 LLC v. John Doe*, No. 2:12-CV-8333-ODW (JCx), 2013 WL 1898633, at *1 (C.D. Cal. May 6, 2013). On behalf of Lightspeed Media, a company that operates websites purveying online pornography, the Attorneys sued a John Doe defendant in Illinois state court under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and state law. *Lightspeed I*, 761 F.3d at 702. They then served *ex parte* subpoenas on several Internet service providers (ISPs), demanding that the ISPs hand over the

personally identifiable information of more than 6,600 "co-conspirators" who, Lightspeed alleged, had violated the Act. This suit was only one among many similar actions that the Attorneys filed in courts around the United States. They evidently hoped to extract quick settlements from individual users whose personal information was revealed; few defendants, they believed, would be willing to litigate their pornography consumption in open court.

But they overlooked a key vulnerability in their strategy: the need for information held by ISPs. It turned out that the ISPs were not willing to cooperate; to the contrary, in our case, the ISPs filed motions to quash the subpoenas and sought a protective order. The Illinois courts refused to compel compliance, after which the ISPs removed the case to the U.S. District Court for the Southern District of Illinois. *Id.* at 702–03.

At that point, things started to unravel for our heroes. A court in the Central District of California imposed sanctions on them in a similar case. *Id.* at 703. Perhaps seeing the handwriting on the wall, the Attorneys began voluntarily dismissing cases across the country, including this one. *Id.* Shortly after the district court granted Lightspeed's motion for voluntary dismissal, Smith filed a motion for attorney's fees under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 54(d)(2). *Id.* at 703–04. On November 23, 2013, the district court found that the Lightspeed lawsuit was frivolous, baseless, and "smacked of bullying pretense," and imposed sanctions of $261,025.11, jointly and severally, against Hansmeier, Steele, and Duffy.

These are the third and fourth appeals arising out of that order. After the three failed to pay their sanctions, defendants

Comcast, AT&T, and Smith moved for contempt. The Attorneys repeatedly asserted that they had no money or assets with which to satisfy the sanctions order. The district court scheduled a show-cause hearing for February 13, 2014.

Doubting the Attorneys' claims of insolvency, Smith issued third-party subpoenas to 12 of the Attorneys' financial institutions on January 16, 2014. He also served each of the three with interrogatories and requests for production. Denying receipt, they did not comply. On January 30, each attorney moved to quash Smith's subpoenas to his financial institutions. That same day, Steele faxed a copy of the motion to quash to JPMorgan, but without revealing in what court it had been filed or whether it had been granted. When JPMorgan requested a court-stamped copy, Steele did not reply.

At the hearing on February 13, 2014, the Attorneys insisted that they could not pay the sanctions. The district court ordered them to produce financial statements prepared by certified public accountants; they did so, submitting the statements in camera. On February 19, the district court denied Steele's January 30 motion to quash Smith's subpoenas. On March 3, JPMorgan again requested a court-stamped copy of the motion to quash. Duffy sent it, but failed to disclose that the motion had been denied.

On March 20, 2014, Smith filed a renewed motion for contempt based on the Attorneys' financial statements, their representations to the court, and discovery interference with regard to JPMorgan. The district court held all three attorneys in contempt on March 24, 2014, and ordered them to pay the defendants $26,102.58, an amount equal to ten percent of the original sanctions award. That day, Smith issued eight new third-party subpoenas to the Attorneys' financial institutions.

On April 4, 2014, the district court stayed the contempt order pending the Attorneys' appeal. On April 11, Steele told Smith's counsel that he had informed the subpoenaed third parties that "the action ha[d] been stayed and the subpoenas must be withdrawn." This was untrue: the stay order did not apply to the subpoenas. That fact, however, did not stop Steele on April 16 from faxing a copy of the stay order to Sabadell United Bank and stating that the matter was stayed. Two days later, Smith moved for sanctions against Duffy and Steele for obstructing discovery.

On April 21, 2014, Hansmeier moved to quash Smith's March 24 subpoenas. The Attorneys' third-party financial institutions continued to withhold production. On July 31, 2014, we decided *Lightspeed I*, upholding the sanctions and contempt orders against Hansmeier, Duffy, and Steele.

On October 20, 2014, the district court denied Hansmeier's April 21 motion to quash. On November 12, 2014, the court held a hearing on Smith's motions for renewed contempt and discovery sanctions. It denied them on November 18. In the interim, Smith received Sabadell's response to his March 2014 subpoena. It revealed that over the course of January and February 2014—just before and after the show-cause hearing at which he had claimed to be insolvent—Steele had withdrawn $355,627.83 from a Sabadell account he shared with his wife. Smith filed a motion for reconsideration on December 15, 2014, pointing to this new evidence justifying sanctions.

In February 2015, Smith received TCF Bank's documents, which included evidence that Hansmeier had control over an entity named Monyet LLC, and records of transfers related to Monyet's Scottrade account. The records showed that Hansmeier had transferred $316,250.00 out of the Monyet account

between the time when fees were itemized and the show-cause hearing. This amount was far more than the sanctions owed under the district court's order—the same sanctions that Hansmeier had claimed he could not pay.

On June 5, 2015, the district court granted Smith's motion for reconsideration, awarding Smith (1) reasonable discovery costs and (2) contempt sanctions of $65,263.00. It ordered the contempt sanctions paid by July 15, 2015. On July 2, Smith itemized $94,343.51 in discovery costs. The court ordered that the latter costs be apportioned equally between Steele and Duffy. The Attorneys filed their notice of appeal from the discovery sanctions on July 6; they filed their notice of appeal of the contempt sanction on August 6.

There have been several significant developments since Hansmeier and Steele filed their notices of appeal. On July 13, 2015, Hansmeier filed for bankruptcy in Minnesota. The district court had ordered Steele and Duffy to pay discovery costs before August 10, 2015. On the appointed day, Steele wired $47,171.75 (his half of discovery sanction) and $65,000.00 (all but $263 of the contempt sanction) to the district court. Duffy's portion never arrived; he died that very day. On December 3, 2015, Hansmeier's bankruptcy was converted to Chapter 7.

**II**

The district court's decisions in this case are all reviewed for abuse of discretion. See *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (motion to reconsider under Rule 59(e)); *Blockowicz v. Williams*, 630 F.3d 563, 567 (7th Cir. 2010) (contempt); *Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 760 (7th Cir. 2005) (discovery sanctions). As usual,

legal conclusions are reviewed *de novo*, and factual findings for clear error. *Blockowicz*, 630 F.3d at 567.

## A

Before we begin our analysis of the Attorneys' appeal, we must iron out an additional wrinkle. As we just noted, Hansmeier's bankruptcy is now proceeding under Chapter 7. "In liquidation proceedings, *only* the trustee has standing to prosecute or defend a claim belonging to the estate." *Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 472 (7th Cir. 1999), overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). Hansmeier therefore is not authorized to pursue this appeal, and so we dismiss it with regard to him. No such complication affects Steele's appeal, to which we now turn.

## B

Steele argues that the district court abused its discretion by granting Smith's motion to reconsider. During the course of litigation, however, district courts need no special authority to revisit their rulings; indeed, the purpose of contemporaneous objection rules is to allow them to fix problems promptly, thereby avoiding wasteful appeals. If there was no final judgment, the court needed no special authority to reconsider its earlier decision. Sanctions against nonparties, however, are final enough to be appealable immediately. See *U.S. Catholic Conf. v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988). That is a good description of the district court's decision in this case. We therefore assume, generously to the Attorneys, that reconsideration was possible only insofar as Federal Rule of Civil Procedure 59(e) permits. That rule requires the movant to "demonstrate a manifest error of law or fact or present

newly discovered evidence." *Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011).

After failing to persuade the district court to impose discovery sanctions, Smith presented newly discovered documents about Steele and Duffy's misleading communications with JPMorgan and Sabadell. As we noted before, some of those documents showed that Steele had withdrawn more than $300,000 in funds from his Sabadell account in the period immediately before and after the show-cause hearing. The district court evaluated these documents in light of other evidence that Steele had lied when he said that he could not pay the sanctions order.

Steele offers only the weak argument that Smith should have obtained and submitted this evidence earlier, and that Smith's lack of diligence should cut off this line of inquiry. See *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (quoting *Engelhard Indus., Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963)). This approach has little but chutzpah—a quality that Steele and his compatriots have long demonstrated—going for it. To begin with, it was Steele and Hansmeier's actions that prevented Smith from obtaining the necessary evidence in time for the November 12, 2014 hearing. (Indeed, Steele and Hansmeier maintained at the hearing that Smith should receive no further discovery because he already had all the relevant documents in his possession.) Steele's misrepresentations and Hansmeier's motion to quash delayed Sabadell's production regarding Steele's finances until November 17, 2014. The district court denied Smith's motion the next day. Meanwhile, Smith first sought discovery regarding Monyet from TCF

Bank on March 24, 2014. Because of Hansmeier's second motion to quash and initially incomplete production, Smith was unable to obtain it until February 2015.

Steele nonetheless says that Smith should have found the relevant documents earlier because Monyet's existence was "public record" in 2010, and the relevant documents were attached as exhibits to a debtor's exam in a Minnesota bankruptcy case in June and July 2014. The fact that Monyet's existence was public record is of little import: Smith had no reason to know of its existence, let alone any way to know of Hansmeier's control of the company or the transfers Hansmeier made from its Scottrade account. Moreover, Smith was not a party to the Minnesota bankruptcy case. The district court did not abuse its discretion in granting Smith's motion to reconsider.

## C

The district court found that Duffy and Steele obstructed discovery through their communications with JPMorgan and Sabadell. Steele contends that he did not engage in discovery misconduct, and in the alternative, that the amount of the discovery sanction is excessive and unjustified.

## 1

As we noted earlier, in January 2014 Smith issued third-party subpoenas to the Attorneys' financial institutions; he also served interrogatories and requests for production on the Attorneys themselves. None of the recipients complied, and on January 30, the Attorneys moved to quash the subpoenas. Steele faxed that motion to JPMorgan without a file-stamp. His fax not only implied that the matter was stayed, but it also

made it nearly impossible for JPMorgan to check the case, date, or even court in order to learn the fate of the motion.

On February 3, 2014, JPMorgan requested a court-stamped copy of the motion to quash. Although the district court denied Steele's motion to quash on February 19, Steele did not notify JPMorgan of this development. On March 3, JPMorgan again requested a court-stamped copy of the motion to quash. Duffy complied literally by sending JPMorgan a court-stamped copy of the motion, but he too did not bother to disclose that the motion had been denied. The district court found that, through this behavior, Steele had intentionally misled JPMorgan about its production obligations. The evidence supports this finding.

The district court also found that Steele obstructed discovery on April 16, 2014, when he sent Sabadell a copy of an order staying the original contempt sanctions pending appeal. This submission, combined with the accompanying cover letter, gave the impression that Sabadell should not comply with Smith's subpoenas. What Steele failed to note was that the stay applied only to the original sanctions, not discovery. This communication's only conceivable purpose was to mislead Sabadell as to its obligation to comply with the subpoenas. The district court acted well within its discretion in finding that Steele obstructed discovery on this occasion.

2

Steele complains that the amount of the discovery sanction is "grossly excessive." He argues that the costs for work before his January 30 communication to JPMorgan cannot be justified, as they were not tied to his obstructive conduct. The

district court explained its conclusion to the contrary by noting that "[t]hese expenses were incurred as a direct result of Lightspeed's counsel's refusal to pay the original sanctions order and false assertions of insolvency related thereto. Steele and Duffy used a variety of measures to obstruct the January 2014 discovery efforts (and the March 2014 discovery efforts)."

Section 1927 "provides only for *excess* costs caused by the plaintiffs' attorneys' vexatious behavior and consequent multiplication of the proceedings, and not for the total costs of the litigation." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 756 n.3 (1980) (quoting *Monk v. Roadway Express, Inc.*, 599 F.2d 1378, 1383 (5th Cir. 1979) (emphasis in original)). But sanctions are reviewed "not in isolation but in light of 'the entire procedural history of the case.'" *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 643 (7th Cir. 2011) (quoting *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000)). Courts "weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit." *Id.* Likewise, Rule 37(a) sanctions "should encompass all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly." *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 475 (7th Cir. 1984) (quoting *Aerwey Labs., Inc. v. Arco Polymers, Inc.*, 90 F.R.D. 563, 565–66 (N.D. Ill. 1981)).

As a result, both the district court and we are entitled to evaluate Steele's entire pattern of vexatious and obstructive conduct. Viewed in this light, the sanctions amount is easy to justify. The district court granted the defendants' motion for sanctions on October 30, 2014. By November 13, 2014, the dis-

trict court had denied the Attorneys' motion for reconsideration, Smith had submitted his itemized fees, and the court had forecast that the remaining defendants' costs would be "a couple of hundred thousand bucks each." The Attorneys were aware of the general amount of sanctions, and no later than November 22, 2013, when the last defendant submitted its costs, they knew the full amount of the sanctions. The district court entered its order formally imposing $261,025.11 in sanctions on November 27, 2013.

This was the very time when Steele and Hansmeier were emptying accounts they controlled of sums vastly in excess of the sanctions they owed. This was obviously egregious behavior, and a flat violation of the district court's order. Their actions necessitated Smith's litigation over their ability to pay the sanctions. Smith's compensable expenses reasonably reached back to his first round of third-party subpoenas, issued on January 16, 2014, as the district court found.

D

Steele argues that the contempt sanction the district court levied against him was actually criminal, rather than civil, in nature. Based on that premise, he contends that the court's use of the rules for civil contempt violated the due process clause of the Fifth Amendment. Given the criminal nature of the sanction, it should instead in his view have followed the procedures outlined in Federal Rule of Criminal Procedure 42. And the procedures do differ in significant ways: civil contempt may be imposed if proven by clear and convincing evidence, and without the full criminal procedural process, *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001), while criminal contempt may be imposed only after the subject of the contempt proceeding has "been afforded the protections

that the Constitution requires of such criminal proceedings," *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 632 (1988); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826 (1994).

In determining whether contempt is civil or criminal, "the critical features are the substance of the proceeding and the character of the relief that the proceeding will afford." *Hicks*, 485 U.S. at 631. Civil contempt relief is either coercive or remedial. *Dowell*, 257 F.3d at 699. It is "designed either to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy." *Id.* Criminal contempt sanctions are punitive: they are meant "to vindicate the authority of the court." *Id.* (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)).

A contempt fine is generally "remedial when it is paid to the complainant, and punitive when it is paid to the court." *Hicks*, 485 U.S. at 632. The recipient of the fine is not, however, the sole determinant of whether the contempt is civil or criminal. Rather, the distinction depends on something more fundamental: what the relief is meant to achieve. Because conditional penalties are "specifically designed to compel the doing of some act," they are coercive and therefore qualify as civil contempt. *Id*. at 633. Similarly, "[a] monetary penalty for a wrong committed in federal court is civil in nature[] if the payment is designed to compensate for harm done." *Dowell*, 257 F.3d at 699 (quoting *In re Maurice*, 73 F.3d 124, 127–28 (7th Cir. 1995)). But contempt is criminal "if its purpose is to punish the contemnor, vindicate the court's authority, or deter future conduct." *Id*. A "flat, unconditional fine" that is not meant to compensate for actual harm is a sanction for criminal contempt. *Hicks*, 485 U.S. at 633.

Examining the nature of Steele's fine and its justification, we are convinced that it falls on the criminal side of the line. It was an unconditional fine that did not reflect actual costs caused by the attorneys' conduct. The district court justified the fine of $65,263.00 solely by reference to the attorneys' "contemptuous statements in court." This number, the court commented, was "twenty-five percent of Judge Murphy's original sanction." It added that a "pattern is purposefully developing whereby the contemnors could find their way back to the full sanction … for their original wrongdoing if they continue their misdeeds before this Court." This justification most naturally supports a fine meant to vindicate the authority of the court and deter future misconduct, not an award designed to be compensatory or coercive.

It is also telling that the amount of the fine was not connected to any cost imposed on either Smith or the district court. The court meant instead to punish past behavior and to deter future contemptuous conduct. Nor was the fine tied to any specific future action. While *Lightspeed I* found a fine quantified without reference to billing statements to be a civil contempt, the fine there "corresponded to attorneys' fees and costs incurred by defendants during the course of litigating the contempt motion." 761 F.3d at 712. That is not the case here: the district court said nothing about Smith's costs. It had taken care of the costs attributable to the separate discovery sanctions in a separate part of its order.

Smith points us to *Ingenuity13 LLC v. Doe*, Nos. 13-55859 *et al.*, 2016 WL 3212176, at *3 (9th Cir. June 10, 2016) (nonprecedential), in which the Ninth Circuit held that a sanction labeled a "punitive multiplier"—as luck would have it, also against Hansmeier, Duffy, and Steele—could nonetheless

qualify as a civil contempt. In addition to being nonprecedential, that decision is inapposite. Like the sanction in this case, the sanction in *Ingenuity13* was quantified with reference to the amount of a previous sanction. Unlike this case, however, the *Ingenuity13* sanction was "remedial[] and for the benefit of the complainant," and "did not vindicate the authority of the court but instead 'compensate[d] [the defendants] for losses sustained.'" *Id.* (quoting *Bagwell*, 512 U.S. at 829). (Specifically, the amount was meant to cover the cost of defending the anticipated appeal. *Ingenuity 13*, 2013 WL 1898633, at *5 n.5.) Here, although the district court ordered the Attorneys to pay the contempt sanction to Smith, we can detect no loss for which it meant to compensate him.

This is enough to show that we must vacate the existing contempt order and remand for further proceedings. We make no comment on what type of contempt Smith may wish to seek, whether the court might re-consider the possibility of civil contempt, or whether criminal contempt could be justified once the proper procedures are followed. We are confident that the district court will take a fresh look at these questions in light of this opinion.

## III

Hansmeier is in Chapter 7 bankruptcy and has no standing to appeal the sanctions against him. His appeal is therefore DISMISSED. Because the contempt sanction imposed against Steele was a criminal contempt imposed without the process required by the Fifth Amendment to the U.S. Constitution, it is VACATED. Finally, the district court acted within its discretion by imposing the discovery sanction against Steele, and so that part of its order is therefore AFFIRMED.

Lastly, we have before us Smith's Motion for Damages, Attorneys' Fees and Costs Pursuant to Federal Rule of Appellate Procedure 38 and 28 U.S.C. § 1927. In light of the fact that we are remanding the contempt portion of the district court's order, we DENY this motion. Each party will bear its own costs on appeal.

CERTIFIED COPY

A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit